JOHN E. PARKE, plaintiff in error, vs. N. G. FOSTER, trustee, defendant in error.

[1.] If illegal evidence be admitted to go to the jury without objection, it is no good ground for a new trial, especially where the effect is to benefit instead of injuring the party.

Evidence may be objectionable for one purpose, and in one state of the pleadings, and yet admissible for another purpose, and in another state of the pleadings.

[2.] Where a witness, confessedly a person of truth, has been twice examined in a cause, once by the plaintiff, and again by the defendant, and the answers are contradictory, that is entitled to most credit which was first in point of time, and therefore, nearest the transaction, and which is best corroborated by the facts and circumstances of the case.

[3.] A cash sale of property bears interest from date, although the day of payment be postponed until a particular event transpired.

Assumpsit, in Newton county.   Tried before Judge CABANISS, at the March Term, 1858.

This was an action of assumpsit, brought by N. G. Foster, trustee of John W. Graves, against John E. Parke, to recover the amount of defendant's purchases at the sale of the property of Graves, made by plaintiff as trustee aforesaid.

Parke vs. Foster, trustee.

The defendant pleaded the general issue and the statute of limitations.

Upon the trial, plaintiff offered in evidence, an exemplification of the record of the cause in chancery, of the trustee of said John W. Graves against his creditors, including the order making the creditors parties, and the order referring the case to referees or auditors.

*F. H. Cone*, examined by commission, testified, that he did not recollect the amount awarded and decreed to the claims of defendant, but it might be ascertained by the *per centum* allowed; had no recollection that defendant was present at the reference, but remembers that some of the creditors were.

*Francis W. McCurdy* was twice examined by commission, first on the part of plaintiff, then on behalf of defendant. In his first examination he deposed, that he was present in 1847, at the sale of the property of John W. Graves, by his trustee, the plaintiff; he kept the books, and acted as cashier; defendant purchased the property charged in the bill of particulars annexed; the sale was for cash; defendant did not pay him (witness) for the property he purchased, and if he paid any one, it did not come under his knowledge; his understanding from the parties was, that defendant being a creditor, the amount of his purchases was not to be paid till there was a settlement, and he was then to be allowed a credit for the amount coming to him, upon a *pro rata* allowance among all the creditors; heard this from defendant; such was witness' understanding of all the purchases of the creditors. Witness further understood from both parties, that such property as defendant bid off, was to be taken by the trustee and disposed of for the benefit of all the creditors, and it was to be charged to the person to whom it was eventually sold, which was generally done.

Upon his second examination, this witness, *McCurdy*, deposed, that he heard at the sale, that defendant was a creditor of John W. Graves; that he heard of no arrangement be-

tween plaintiff and defendant, by which defendant's purchases were to be held up until a settlement was had, nor did he know of any understanding between them, as to defendant's claims against Graves, and his purchases at the sale; never heard any conversation between them, or defendant, and any other person, as to what was to become of defendant's purchases; all his information, as to defendant's purchases lying over until a general settlement, was derived from the fact, that other creditors purchased property with the understanding that they were to share with other creditors at the final settlement, and that their purchases were not to be settled for until the result was known. All that witness knows, that would go to show that defendant purchased property as agent for the trustee, is, that defendant seemed to be busy in arranging and selling of property, and heard plaintiff say, that the defendant was worth a great deal to the creditors, in making property sell for a good price.

The testimony here closed.

The Court charged the jury, who found for the plaintiff; and defendant moved for a new trial, on the grounds that the Court erred in its charge to the jury, and that the verdict was contrary to law and the evidence.

The Court refused the motion for a new trial, and defendant excepted.

The charge of the Court, alleged as error, is fully set out, in the opinion of this Court, below.

CLARKE & LAMAR, for plaintiff in error.

PEEPLES, representing N. G. FOSTER, *contra.*

*By the Court.*—LUMPKIN J. delivering the opinion.

This was an action of assumpsit, brought by the trustee of John W. Graves, against John E. Parke, to recover of the defendant, the amount of purchases made by him at the sale

of Graves' property by the trustee; to which the defendant pleaded the general issue, and the statute of limitations. The jury found a verdict for the plaintiff; a motion was made for a new trial, and this writ of error is brought to reverse the judgment of the Court refusing to grant the motion.

1. The first complaint is to the charge of the Court. The charge as set forth in the motion for a new trial, does not correspond with the charge as given. Was the discrepancy material, we should be bound to look to the charge itself. It is in the hand-writing of the presiding Judge, certified by him to be correct, and of course authentic. His Honor instructed the jury, that if, upon the sale of the property by the plaintiff to the defendant, it was agreed that the day of payment should be postponed until it could be ascertained what was the *pro rata* share coming to the defendant, from the sale of Graves' property, Parke being a creditor, the statute of limitations commenced running from that time, and not before. And it is alleged in the application for a new trial, that Judge CABANISS added, that the settlement, or *pro rata* share, might be ascertained in a variety of ways; that is, by the parties, by bill in chancery, or by arbitration. It was not even affirmed that the *pro rata* share was ascertained in any one of these ways, in this case. Such, however, was the fact. It was suggested merely by way of illustration.

Now, let it be borne in mind, that the parties were at issue in this case, upon the plea of the statute of limitations, and upon nothing else. The witness, Francis W. McCurdy, in answer to the first set of interrogatories exhibited to him, testifies, that he was present in 1847, when the property of Graves was sold; that he kept the books, and acted as cashier; that John E. Parke bought the articles charged to him in the bill of particulars annexed to the writ; that it was a cash sale, but that Parke did not pay him, or any one else, for the negroes and other property purchased by him; and that he learned from Parke himself, from the conversation between him and the other creditors, that his indebtedness

for things bid off at the sale, was to stand until his distributive share of the assets could be ascertained, and for which he was to be allowed a credit; and that such was the understanding of the witness with all the creditors who were purchasers.

This testimony justified the charge, and entitled the plaintiff to recover, wholly independent of the bill, reference and report, or award of the auditors, made in the premises. Had Parke moved for a nonsuit in this case, or claimed a verdict upon the ground that no settlement had yet been made, and that the suit was prematurely brought, according to the agreement, as proven by McCurdy; and when the plaintiff relied upon the award or report of the auditors, objected that he was not a party to that proceeding, the case might have assumed a different aspect. But no such point was made. The objection is to the charge of the Court, in reference to the statute of limitations—assuming that it was founded upon the chancery proceeding. The reply is, that the claim was taken out of the statute by the evidence of McCurdy irrespective of the bill.

And how has Parke been hurt by the introduction of this record, *without objection at the time from him?* In no way whatever. On the contrary, he got by it, without any plea of payment or set off, or any other such thing to justify it, a credit of $1,100 and upwards, upon his purchases. And if it be true, that he was no party to the proceeding in Court, so as to be bound by it, he is yet at liberty to sue the trustee, and recover whatever amount beyond that he may show himself entitled to. As an honest man, what more could he ask or desire? It is rather singular and somewhat significant, that Mr. Parke does not complain, or attempt to show that he was entitled to any more than was apportioned to him by the able counsel who awarded him, in common with all the other creditors, their forty cents in the dollar. It is also worthy of notice, that he alone, from aught that appears, seeks to disturb the settlement, and that, not by re-opening

it for re-examination, but by having his large liability adjudged to be extinguished by the intervention of the statute, the demand being delayed, that no injustice might be done him. We apprehend that his rights were not prejudiced, for want of his presence, in the hands of the gentlemen who investigated and passed upon them.

I will add a single remark more respecting the charge of the Court. Suppose it had been made upon the record? It was permitted to go to the jury without objection; and whether Parke was a party to it or not, it was not wrong in the Court to treat it as evidence in the case. Had it been objected to at the time, it might perhaps have been shown, that Parke was present personally, or by his counsel. True, Judge CONE testifies that he has no recollection that he was present; but this is mere negative proof, which might be easily overcome.

2. The next error complained of is, that the Court charged the jury, that they must reconcile, if they could, the real or apparent conflict in the testimony of the witness, McCurdy, taken at different times; first, by the plaintiff, and some fourteen months afterwards by the defendant; and that in doing this, due regard should be given to the fact, that his first deposition was nearest the date of the transaction. We agree with the Circuit Judge, that this circumstance deserves some consideration. For, while it may be conceded, that we remember with more distinctness, the occurrences of boyhood and early manhood, when we have but few things comparatively to recollect, still, it cannot be denied, that after middle age, and when we become immersed in the business and bustle of life, events ordinarily fade away from our memory, just in proportion as they recede from us in point of time.

It is agreed on all sides, that the witness is a man of veracity. Both parties have made him their witness, and thereby endorsed his character for truth. And yet, in his second answers, he swears, that he knew of no arrangement between plaintiff and defendant, as he had before stated, and that he never heard of any understanding to that effect.

I must say, without undertaking to explain this contradiction, that the facts of this case strongly corroborate the truth of the first answers. The terms of the sale in 1847, were cash; McCurdy acted both as book-keeper and cashier. No money was paid by Parke to him, nor to the trustee, so far as he knows. *Why was it not paid?* Can any other explanation be given, except the agreement proven by McCurdy? Why was no effort made to enforce payment, until the *pro rata* share coming to this creditor could be ascertained? Is it not reasonable that such an agreement should have been made? Why compel a creditor to pay, when he was entitled to a portion of the proceeds? Mr. Parke was at the sale, and the purchaser of valuable property, to the amount of several thousand dollars. The demand is not only not collected, but not even liquidated by note. He even bid off other property, which was turned over to others, in order to make it bring its full value. Is it likely that such an understanding could have been made, with the creditors generally, and he be ignorant of it, and not participate in it? Of course, he would assent to it, it being for his benefit. Is it likely that he would have paid for his purchases, being a large creditor of the fund, and kindly offered this indulgence by the trustee? McCurdy, it is altogether probable, heard what he says he did, when first examined.

3. The Court charged the jury, that inasmuch as it was a cash sale, they should calculate interest up to the time the settlement was made, deduct the amount coming to Parke, and give their verdict for the balance. This was right. The auditors had awarded to the creditors forty cents in the dollar; and although not pleaded, the Court directed the credit to be allowed. The defendant, certainly, could ask no more. In strict law, he was not entitled to that.

4. It is in the last place insisted, that the verdict is contrary to law and evidence. We think it was in accordance with both, as we doubt not it is with the justice and equity

of the case; and take pleasure in affirming generally, as we do, the judgment of the Superior Court.

Judgment affirmed.