## McCord v. The State of Georgia.

1. On a trial for perjury, where the evidence in behalf of the State tends to show that the accused testified under the motive of pecuniary interest created by bribery, he has the right to reply to such evidence by proving that before there was opportunity for offering him a bribe, and within about one hour after the occurrence touching which he testified, he related the facts and circumstances (these being now recited) substantially in accordance with his account of them as subsequently given by him on oath as a witness, his testimony as then given being the alleged perjury.

2. Whether the time when the accused was first known as a witness is of any weight in his behalf, is a question for the jury under all the circumstances of the case. Such a fact may have weight for or against him, where there is imputation of bribery.

3. It is not admissible to prove in general terms that the account given by the accused out of court before he testified, was the same as that to which he testified, the witness judging of the coincidence, and not detailing the account heard by him to the jury so as to enable them to judge of it for themselves.

4. Evidence that the person in whose behalf the accused testified when the alleged perjury was committed was insolvent or of limited means, is not admissible to repel the imputation of bribery.

5. The assignment of perjury embracing several particulars, it was not prejudicial to the accused for the court to stress one of them as being the main material matter, in charging the jury.

6. Knowledge by a witness that his testimony is false is tested, like intention generally, by sound mind and discretion, and by all the circumstances, soundness of mind, where nothing to the contrary appears, being assumed.

7. It is not improper for the judge to inform the jury that he charges them on the prisoner's statement because the law obliges him to do so. The charge touching the statement, and the right and duty of the jury in dealing with it, was substantially correct.

8. The instructions of the court to the jury were not argumentative, but some of them were confused, and several of them, as set out in the transcript, inaccurately expressed, due in part, no doubt, to careless clerical work in preparing the transcript.

9. A request to charge which embraces a statement that a material fact is not material, or that it makes no difference, should be denied.

October 28, 1889.

Criminal law. Perjury. Evidence. Witness. Charge of court. Presumptions. Sanity. Prisoner's statement. Before Judge Richard H. Clark. Fulton superior court. March term, 1889.

83 521
88 54
83 521
93 458
83 521
121 293
83 521
124 453
124 654
83 521
d125 517

The defendant excepted to the overruling of his motion for a new trial on the following among other grounds:

(2) The court charged: "The defendant is to be tried upon what he is alleged to have sworn. As to whether he was in the alley-way or not, if there is testimony to the effect that he was not ·in the alley— could not have been in the alley, and if you should believe that testimony, that is simply a circumstance for you to consider to throw light upon the real perjury that is charged in the bill of indictment."—Error, because in the indictment the fact of defendant's testifying that he was in the alley is particularly and fully set forth, and negatived and assigned as perjury, and the State introduced evidence to sustain such assign. ment; and the court should not have singled out any particular part of the assignments of perjury as the "real perjury," it being the province of the jury to pass upon the entire assignment without elimination by the court.

(3) The court charged: "Usually, in ordinary cases where a man is charged with perjury, with having sworn falsely, the fact of his seeing the crime is considered admitted, but that, having seen it, he swore falsely as to what he saw. There is a difference as to this part of the question here, in that it is claimed he never saw it at all, and never having seen it, must consequently have sworn falsely; so that you will keep up this distinction all the way through your delibera. tions, between what he is charged with swearing and the evidence as to whether he was in the alley or not." —Error for the reasons set forth in the preceding ground; also because misleading, and containing expressions of opinion as to what had been proved and of the guilt of defendant.

(4) The court charged: "You will observe that the

main fact charged as having been sworn to falsely, the leading fact, the fact around which all the other facts revolve, is as to whether Gresham, in that encounter with Eddleman, held in his hand a knife. Now first settle that matter in your minds as to whether you believe from the evidence that Gresham held in his hand a knife. That is not all. It is material not only that Gresham should have held in his hand a knife, in order to have matter that is material to the issue, but that he was advancing upon Eddleman with that knife. The language in the bill of indictment is, that the defendant swore that Eddleman was backing towards the back door. Therefore if you should believe that he was not backing towards that back door, and that Gresham was not advancing, which is the same thing, why then you must consider whether you believe that to be false or not, and that after backing within eight feet of the door, he shot said Gresham, who was within two or three feet of him, that Eddleman backed from Gresham, that Gresham was advancing, and that when the shot was fired Gresham was within two or three feet of Eddleman; thus, gentlemen of the jury, there is the knife which plays such a conspicuous part in that issue, and which is the main element in that case of Eddleman's defence, and the principal element of falsehood that is charged to have been committed in this case."—Error, because confused and misleading; because minutely argumentative in setting forth the State's side of the case without correspondent mention of defendant's side, and nowhere in the entire charge is defendant's side of the case mentioned or dwelt upon; and because the court singles out particular parts of the assignments of perjury and lays great stress thereon in distinction to other parts, to the detriment of defendant.

(6) The court charged : " I mean that as *prima facie* evidence adduced by the State alone, but whether there

are two witnesses or any number of witnesses, you would have in your investigations to weigh and give effect to what all the witnesses testified, and especially to what the witnesses for the defence swore to, and what two or more witnesses for the State swore, as I have submitted to you. But while one witness and corroborating circumstances may be sufficient, still if there are two witnesses who swore, their testimony may be strengthened, because the jury is not obliged to confine the fact of perjury upon the whole issue to what two witnesses have sworn."—Error, because confused, misleading and calculated to injure the defendant.

(8) The court charged : " In other words, I wish you to understand, if you believe from the evidence that the defendant made known at a particular time afterwards, or that it became known, that he was a witness in that case, that that is nothing, and as evidence is not to be weighed in his favor, because, unless that was sustained by some other facts in the case, it is one and the same thing ; it is what the defendant himself says in support of his oath. You must be satisfied from the evidence that no matter when that fact took place, no matter when or where he knew that he was a witness, and that he swore falsely at that time, and under the rules of law I have given you in charge, under the facts put before you in this case as to the point of time when this defendant ascertained, or where it was ascertained, that he was a witness, that is not to be weighed in his behalf, and is to be tested by what occurred on the trial of the case."—Error, 1st, because, under the case as contended for by the State alleging bribery and conspiracy, the particular time when McCord was first known as a witness in the Eddleman case, or had witnessed the fatal rencounter, was a most important circumstance which should have gone to the jury and been duly considered by them in passing on the question of conspiracy or

bribery or good faith of defendant; 2d, because painfully argumentative against the defendant.

(9) The court charged: " This does not prohibit you from looking into all the circumstances that tend to the looking into the truth or falsity of that statement that was given in evidence upon this trial; and if you should believe from the evidence, all of the facts in this case, that the evidence of this defendant in the trial of Eddleman, was a contrivance that was gotten up subsequently to the transaction, and was in specific terms manufactured evidence, and if in the progress of your investigations you find it necessary to resort to all the surrounding circumstances in the case, the time and the amount of evidence and the men who testified, and still, after having by these means thrown upon it all light that the evidence affords, you may pursue your investigations and see whether this was or not such a contrivance or arrangement, and throw all the light possible upon it.'' —Error, because argumentative, reiteration of the State's theory, and containing an intimation as to what the court believed had been proved.

(10) The court charged: "I have charged you that it matters not, it is not necessary for the establishment of perjury, if you believe that the defendant was in the alley at all. That, however, like the other matters that I have called your attention to, is an important factor in this case. You have a right to investigate the matter and see whether the evidence is sufficient to convince your minds, beyond a reasonable doubt, that this defendant was not in the alley. If you should believe that he was not in the alley, believe it beyond a reasonable doubt, and find besides that what he swore to was not the truth, it will be your duty to find the defendant guilty ; not but that he might have been in the alley and yet swore falsely to the facts, might have sworn falsely as to the facts."—Error for the reason

set forth in the assignment of error in the second ground, wrongfully singling out one part of the assignments of perjury in distinction to the others and giving undue prominence thereto.

(11) The court, after correctly charging the law as to defendant's statement, added the following : "That is your right, and under the law I am bound to give it to you in charge. In reference to the statement, the statement consists or should consist of facts that are pertinent to the defence, and therefore you are to choose between those facts which go to the defence of the defendant, and those facts in evidence, which you may believe to be facts, that you believe go to the conviction of the prisoner, and between the two your judgment is supreme. The statement is not evidence, but it only becomes available if the jury shall choose to give it effect."—Error, 1st, because it detracts from the force and worth of a prisoner's statement allowed by law, showing that the opinion of the court was that the prisoner's statement was worth but little, but that he was compelled by law to refer to it ; and. 2d, it was misleading, relating to an hypothesis not supported by the statement, nothing therein appearing that could "go to the conviction of the prisoner"; and the jury were thereby probably led to suppose that their memory was imperfect, and that of the judge superior and more reliable, as to what the prisoner stated, and that he must have made statements which might tend to his conviction.

(12) The court charged : "Now there is a principle that applies here, a principle of law, and that is, that every man who is charged with the commission of a crime shall be endowed with that amount of human reason and that amount of knowledge as will make him responsible for his conduct, whatever it may be ; and whoever is charged with a crime who has respon-

sible reason, and having that has passed the age of
fourteen years, is considered by the law to be in that
condition and that amenable, but if he desires or shows
or claims that he is not, then it is his duty to remove
that presumption of the law by proof showing the con-
trary.   Therefore, in the absence of that proof, a man
stands responsible for what he has done as a rational
man, that he is responsible for his conduct, and has to
be considered as such and treated as such.   Therefore
it is necessary for you to consider, when you come to
consider the facts, as to whether this defendant, if he
swore falsely, if you must believe that, that he did so
knowingly."—Erroneous and misleading, because there
was no pretence that defendant was not perfectly sane
and rational and had attained to years of discretion;
and this charge makes defendant's sanity and the fal-
sity of his evidence absolutely conclusive of the exist-
ence of perjury.

(13) The court excluded the following testimony:
"This was about an hour after the shooting that this
conversation took place on the corner of Alabama and
Pryor streets.   I asked him (McCord) if he saw it (the
shooting), and he said he did and was at the alley
door when it happened; said that he had been in
Scott's, on the opposite side of the way, and went over
and looked in and saw Eddleman backing and a large
man cutting at him with a knife, and then Eddleman
shot, and then he went on.   That was his statement to
me, substantially;  .  .   it was entirely unsolicited on
my part."—Error, 1st, because it was so near in point
of time to the rencounter as to become a part of the
res gestæ; and 2d, because the State persistently en-
deavored to show by a witness that the reason why
McCord testified as charged was, because of a plot,
months after the killing, to obtain a bribe; and the
above evidence ought to have been received in rebuttal
thereto.

(14) The court refused to permit one of defendant's witnesses (one of Eddleman's counsel) to answer this question : "How did his (McCord's) statement at your office in June coincide, if at all, with his testimony at the trial, without giving the particulars ?"—Error, because the statement referred to was made soon after the homicide and long before Eddleman's trial, and was in rebuttal of the State's testimony as to a plot between McCord and Heflin to obtain a bribe, said to have occurred months after the statement was made.

(15) The court erred in refusing to allow the same witness to answer the question, "How much of the fee in the Eddleman case have the attorneys in that case ever received, and what was the financial condition during his imprisonment and up to his departure from Atlanta after his acquittal ?", defendant's counsel stating that the witness was intimately acquainted with the financial condition of Eddleman; that all of the money Eddleman could raise was applied. to the legitimate expenses of witnesses; and that none of his lawyers had received one half of the fees contracted for.    This testimony should have gone to the jury in rebuttal of the State's evidence and contention that defendant was bribed to swear as he did.

(16) The court refused to charge thus : "You are instructed that it makes no difference, in point of fact, whether Mr. Gresham really had a knife or not; the real question for you to decide is, whether or not the defendant in this case willfully, knowingly and absolutely swore falsely when he testified that Mr. Gresham did have a knife.    If the defendant believed that he had a knife, although he may have been mistaken, and although Mr. Gresham may not have had the knife, you would not be authorized to find the defendant guilty. It is proper for the court to instruct you, in view of the evidence in this case, that whatever opinion you

may entertain on the question of guilt or innocence of Mr. Eddleman, it should have no weight or influence on your minds in determining the guilt or innocence of this defendant."—Error, because, under the evidence, the jury may reasonably have concluded that though Gresham may not have had a knife in his hand, yet defendant may really in good faith have so believed and testified under such belief; and because it was shown that this case and Eddleman's were closely allied and intermingled, and that high excitement and prejudice against Eddleman existed; making the warning in the charge requested a proper and necessary one; such charges or their substance not being mentioned or referred to in the general charge.

GARTRELL & LADSON and ARNOLD & ARNOLD, for plaintiff in error.

C. D. HILL, solicitor-general, by HARRISON & PEEPLES, for the State.

BLECKLEY, Chief Justice.

McCord was found guilty of perjury, and moved for a new trial, which was refused. The imputed perjury was committed by him (if at all) when testifying as a witness in behalf of Eddleman on Eddleman's trial for the murder of Gresham. The alleged false matter testified to was, substantially, that he (McCord) was in a certain alley, and saw a large man (Gresham) striking with a knife at Eddleman, Eddleman backing and Gresham advancing; and that the former shot the latter when they were only a few feet apart. The homicide took place in May, and Eddleman was tried in October following. On the trial of McCord, the State, after proving that he had testified as alleged, and after adducing evidence tending to show that his testimony was false, proved by one Owens that he overheard a conversation in July or August between McCord and

v 83-34

Heflin, in which the former said to the latter that if he got up and swore that Gresham had a knife, he would have to have better security than Hildebrand was; to which Heflin replied that he was all right, just go ahead and it would be all right; and that McCord said, "Suppose anybody says that nobody was in the alley?" to which Heflin answered that everything was in confusion, and nobody could tell who was in the alley.

1. The plain tendency of this evidence was to show, either that measures were in progress at that time to bribe McCord as a witness in behalf of Eddleman, or that some agreement in the nature of bribery had already taken place. To meet this evidence, McCord offered the testimony of Langley, to the effect that in about an hour after the homicide, he (McCord) communicated to Langley the fact that he was in the alley, saw the rencounter, and detailed the circumstances to Langley substantially in accordance with his testimony as delivered upon the trial of Eddleman. This testimony the court rejected. It appears from other evidence in the case that as soon as the homicide was committed, Eddleman was taken into custody and carried to prison. There is no suggestion that any intercourse whatever took place between him and McCord prior to the conversation of the latter with Langley. Nor does it appear that there was any special relation between Eddleman and McCord calculated to induce the latter to volunteer as a false witness in his behalf. The earliest intercourse indicated anywhere in the record as taking place between McCord and Hildebrand, who it seems acted as agent for Eddleman in preparing or procuring evidence for use on his trial, was one week or about one week after the homicide. This time is fixed by McCord's statement made to the jury on his trial. The evidence on the subject which came from Langley tends to make the period longer, to wit, two or three

weeks after the homicide, Langley testifying that in about that length of time, Hildebrand inquired of him, by describing McCord, what his name was and where he could be found, which information Langley gave him. Under these circumstances, the question is whether the court erred in refusing to allow the evidence of Owens in behalf of the State, tending to show that McCord testified under the influence of a bribe, to be answered by the testimony of Langley, tending to show that he gave the same account of the homicide within about an hour after it occurred, as that which he detailed on the trial of Eddleman.

The solution of this question will be materially aided by inquiring whether the proposed evidence would have been admissible in behalf of Eddleman on his trial had the like attack for bribery been then made by the State upon his witness McCord, the person now accused of perjury. Formerly, in England, previous consonant statements by a witness were considered admissible in evidence to support the testimony given by him at the trial, the same as previous inconsistent statements to impeach him. Gilbert's Ev. 150; McNally's Ev. 378; Lutterell v. Reynal, 1 Mod. 282. This broad rule, however, was found to be radically unsound, and from the time of the case in 3 Douglas, 242 (The King v. Parker), has generally been considered as exploded. A remnant of the rule still holds its footing in the law, which remnant may be expressed as we find it in 1 Thomp. Tr. §574: "Where the witness is charged with testifying under the influence of some motive prompting him to make a false statement, it may be shown that he made similar statements at a time when the imputed motive did not exist." "So in contradiction of evidence tending to show that the witness's account of the transaction was a fabrication of a recent date, it may be shown that he gave a

similar account before its effect and operation could be foreseen." *Id.* §576. The doctrine in one or both of these forms is recognized by many authorities, amongst them the following: 1 Phil. Ev. 308; 1 Starkie Ev. 221-2; Roscoe Crim. Ev. 185; 1 Greenl. Ev. §469; Taylor's Ev. §1476; Craig *v.* Craig, 5 Rawle, 91; Robb *v.* Hackley, 23 Wend. 50; The State *v.* Vincent, 24 Iowa, 570; the People *v.* Doyell, 48 Cal. 85. Doubtless there are cases in which the doctrine has been *applied* as well as recognized, but we have not felt called upon to make an exhaustive search for such cases, as we consider its inherent soundness, together with its recognition by the standard text-writers, as sufficient. We can entertain no doubt that had Owens testified on the trial of Eddleman as he did on that of McCord, the fact that McCord told Langley that he witnessed the homicide, and that the circumstances were as he detailed them to Langley, would have been admissible in evidence for the purpose of repelling or in some degree weakening the imputation of bribery cast upon McCord by the Owens evidence. As was said by Reade, J., in The State *v.* Parish, 79 N. C. 610, "The fact that supporting a witness who testifies does incidentally support the facts to which he testifies, does not alter the case. That is incidental. He is supported, not by putting a prop under him, but by removing a burden from him, if any has been put upon him. How far proving consistent statements will do that must depend upon the circumstances of the case. It may amount to much, or very little."

Does it follow because this evidence would have been admissible on Eddleman's trial in answer to a charge of bribery, that it was admissible on McCord's trial in answer to the like charge? We think it does. If Eddleman would have been entitled to remove a burden from his witness by showing previous consistent statements

made directly after the occurrence to which they related, McCord should be allowed to cast off or lighten the same burden by the same means. Any evidence which would tend to show in behalf of Eddleman that McCord did not testify as he did under an interested motive, would have the same tendency in behalf of McCord himself; and so we think the court erred in excluding this evidence, the same being admissible, not for the purpose of showing directly that his testimony on the trial of Eddleman was true, but for the purpose of showing that he did not have the motive of bribery to induce him to invent it, as might be inferred from the testimony of Owens were it left wholly unanswered.

2. On a trial for perjury, it may be a material fact in favor of or against the accused as to when and how he first became known as a witness in the case; and the evidence on the subject of the materiality of such fact, in the light of all the circumstances, would be a question for the jury, and it would be improper for the court to charge that they could not consider it as weighing anything in behalf of the defendant, especially if no like injunction was imposed against weighing it in behalf of the State. We consider the charge as set out in the 8th ground of the motion for a new trial as objectionable, for if the topic was one to instruct the jury upon at all, as the evidence then stood, the jury should not have been excluded from considering it in the defendant's favor, and at the same time left free to consider it, as well as all other facts, against him.

3. The exclusion of the evidence of Judge Dorsey (one of the counsel for Eddleman) to the effect that in an interview of the counsel with McCord, which took place in June preceding the trial of Eddleman, McCord's statement made then coincided with what he testified on the trial, was not error; for the reason that the question to Dorsey expressly excluded any disclosure

as to what McCord did say, but simply referred to Dorsey the decision of coincidence between what was said then and what was testified to by McCord upon Eddleman's trial. If this coincidence was a matter for decision at all, the reference should have been to the jury, and not to the witness. Whether McCord's statement to the counsel on that occasion, if detailed in full, would be admissible evidence under the rule announced in the first head of this opinion, we need not now consider, as no such question is made in the record.

4. Evidence that Eddleman had not paid in full the fees of his counsel, and that his means were limited, or that he was insolvent, was not admissible to repel the imputation of bribery which Owens' testimony tended to cast upon McCord. Unless it could be known how much it would take to bribe McCord, whether the means of Eddleman for that purpose would be sufficient or not, could have no relevancy. Moreover, the aid of friends might have supplied the means in whole or in part.

5. It was not prejudicial to the accused for the court to single out the main element in the assignment of perjury, and stress that as the material matter in the assignment. This was to narrow the basis for a conviction and not to widen it. It was therefore favorable to the accused, instead of being prejudicial.

6. There was no evidence of want of sanity by the accused, and consequently the charge complained of in the 12th ground of the motion on that subject seems to us misleading. If meant to intimate that knowledge by McCord of the falsity of his testimony on the trial of Eddleman would have to be negatived, if at all, by proof that he was of unsound mind, the charge would be grossly erroneous, for soundness of mind relates to capacity for knowledge, not directly to knowledge itself. One may have full capacity to know a fact, and still be

mistaken as to the existence of the fact. The jury, in considering whether the alleged perjury was knowingly committed, would not be restricted to the capacity of McCord for acquiring knowledge, but should take into consideration all the circumstances tending to show either that he was or was not mistaken. Code, §4293. Insanity is not the sole test of mistake, and we do not suppose that the court intended to announce it as such, but the charge set out in the ground referred to seems to us susceptible of that construction. We have read it in connection with the whole charge of the court, and do not find it cleared up anywhere in the context.

However, if McCord's testimony on the trial of Eddleman was false, there is scarcely a glimpse in the evidence of any reason for thinking he did not know it was false, so this part of the charge was probably harmless.

7. The charge in the 11th ground of the motion touching the prisoner's statement is correct in substance. There is no reason why the judge should not inform the jury that he is bound by law to instruct them on that subject. The duty is virtually imposed by statute, and it is well enough for the jury to know that it is a statutory right of the prisoner to have it performed. Code, §4637. Instead of its being less impressive, it ought to be more so on that account.

8. Several parts of the charge are complained of as confused and argumentative. None of them are argumentative, but some are more or less confused. We find inaccuracies of expression in those parts set out in the 3d, 4th, 9th, 10th and 12th grounds of the motion for a new trial. Some of these inaccuracies may be due to erroneous copying by the clerk in making up the transcript. It is evident that the clerical work in preparing the transcript was very carelessly and imperfectly done.

9. The request to charge set out in the 16th ground of the motion was rightly refused, for it did make a difference in point of fact whether Gresham really had a knife or not, and for other reasons which need not be specified. The court erred in not granting a new trial.

*Judgment reversed.*