Leaptrot v. The State of Florida—Syllabus.

JAMES B. LEAPTROT, PLAINTIFF IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. It is not a sufficient ground of exception to the ruling of a trial court, sustaining a challenge of the State to a juror, that a defendant was thereby, after having exhausted his challenges, compelled to accept another juror, to whom he objected because of this ruling of the court, when it

does not appear that the juror that was forced upon him was not in every way competent, qualified and unbiased, and when no injury is shown.

2.  The discretion of a trial judge in rejecting a juror will not be disturbed unless it is shown that there was an abuse of such discretion prejudicial to the defendant.

3.  On the trial of a party for perjury alleged to have been committed by him in the Circuit Court, in answer to questions put to him by the judge as a juror, on his voir dire examination, the questions asked him and the answers given by him, may properly be proven by the State Attorney, Clerk of the Circuit Court or by any other competent witness who heard the same.

4.  In the trial of a charge of perjury the mental condition of the defendant at the time the alleged false oath was taken, and his physical condition as bearing on the mental, including his powers of memory, are proper subjects of investigation; as perjury is committed only where there is intent to testify falsely. This investigation may involve the question of sanity, but not necessarily so, and any competent witness who knows the defendant, may give his opinion as to his failing condition of mind and memory at the time of his committing the alleged perjury.

5.  A defendant in a criminal case is not entitled as of right to an instruction to the jury to render a verdict of not guilty.

6.  In a prosecution for perjury, where the evidence justifies it, a defendant is entitled to an instruction, if he properly prepares and requests it, requiring the jury to take into consideration his mental condition at the time of committing the alleged perjury, whether normal or failing, and his memory whether good or bad, as bearing upon the question of the wilful, corrupt perjury charged against him, and the reasonable doubt of his guilt.

7.  The evidence examined and found not to sustain the verdict.

This case was decided by Division B:

Writ of Error to the Criminal Court of Record for Duval County.

## STATEMENT.

On the 27th of June, 1905, an information was filed in the Criminal Court of Record of Duval County against the plaintiff in error, hereafter called the defendant, wherein it was charged in substance that on the 6th of June, 1905, in the trial of one Jake Bradford in the Circuit Court of said county, on an indictment for murder in the first degree, in selecting the jury for the trial of this case, that the defendant among others was called as a juryman and was sworn by the clerk of the Circuit Court, having sufficient authority, to give true answers to such questions as might be asked him touching his competency as a juror, and that the defendant was asked by the Circuit Judge whether he had formed or expressed any opinion as to the guilt or innocence of Jake Bradford, and whether he was then and there sensible of any bias or prejudice resting in his mind either for or against Bradford, which were material questions, and that the defendant did then and there knowingly, falsely, corruptly, wilfully and wickedly say, depose and swear to and before the said Circuit Judge, that he, the defendant, had not formed or expressed any opinion as to the guilt or innocence of said Bradford of said charge of murder in the first degree, *"and then and there* that he the said James B. Leaptrot was not sensible of any bias or prejudice resting on the mind of him the said James B. Leaptrot, either for or against the said Jake Bradford," * * * whereas in truth and in fact the said James B. Leaptrot * * * had previous to the time of his being called and sworn * * * as aforesaid, and in the

presence of one F. D. Miller and T. H. Smith and divers
other persons whose names are  *  *  *  unknown, ex-
pressed an opinion as to the guilt or innocence of said
Jake Bradford of the said charge of murder in the first
degree, by then and there stating to and in the presence
of the said F. D. Miller and the said T. H. Smith  *  *
*  that he the said James B. Leaptrot would hang the
said Jake Bradford if he said James B. Leaptrot should
get on the jury selected to try the said Jake Bradford,
and whereas in truth and in fact the said James B. Leap-
trot was then and there sensible of bias and prejudice
resting on his mind against the said Jake Bradford; all
which statements made by the said James B. Leaptrot,
the said James B. Leaptrot then and there well knew
to be false," and concluding that the defendant "did in
the manner and form aforesaid commit wilful and cor-
rupt perjury contrary," &c.

We have given so much of the information as has a
bearing on the questions we shall discuss.

The defendant pleaded not guilty and was tried and
convicted on the 7th of July, 1905. He was sentenced to
the State prison for three years, and from this judgment
and sentence a writ of error was sued out form this court.
Motions in arrest of judgment and for a new trial were
made and overruled, and exceptions taken to these rul-
ings. Such other facts as are necessary to be noticed
will be stated in the opinion.

*Walter M. Davis* for Plantiff in Error.

*W. H. Ellis,* Attorney-General, for the State.

HOCKER, J., *(after stating the facts.)* It is assigned
as error that the trial judge erred in sustaining a chal-
lenge for cause made by the State to a juror. The juror

was examined on his voir dire, and asked the following questions: Q. Mr. Padgett this is a case wherein the defendant is charged with perjury. If the evidence in this case should convince you beyond a reasonable doubt of the guilt of the accused as charged would you find him guilty as you would in a larceny or any other criminal case or not? Ans. No, sir, I would not. Q. If this evidence convinces you beyond a reasonable doubt of the giult of the accused would you convict him? Ans. I would not. The same questions were asked another juror, and the same answers given, and the challenge of the State to this juror was also sustained.

It is contended that inasmuch as the law requires two witnesses, or one witness and corroborating circumstances to convict of perjury, that the questions and answers did not afford legal ground for sustaining the challenge to this juror, and that the defendant was injured by the ruling, inasmuch as after exhausting his challenges, a juror was forced upon him to whom he objected. The objection to this juror was based entirely upon the ruling of the court in rejecting the two jurors above referred to, and not upon any other ground. There is nothing to suggest that he was not in every way competent, qualified and unbiased. It is not a sufficient ground of exception that against his objection a juror was rejected by the court upon even insufficient grounds, unless, through rejecting a qualified person the necessity of accepting an objectionable juror has been created. It is enough that it appear that the case has been tried by an impartial jury. 1 Thompson on Trials, Sec. 120. The discretion of a trial judge in rejecting a juror will not be disturbed unless it is shown that there was an abuse of such discretion prejudicial to the defendant.

6 S. C.

Peaden v. State, 46 Fla. 124, 35 South. Rep. 204, and cases therein cited; Colson v. State, and Melbourne v. State, both of which cases were decided at the present term.

P. D. Cassidey, Clerk of the Circuit Court of Duval county, and A. G. Hartridge, State Attorney of the Fourth Circuit, testified on behalf of the State that the defendant Leaptrot was sworn on his voir dire as a juror on the trial of the case of the State against Jake Bradford charged with murder, and that he was examined as to his qualifications as a juror by the Circuit Judge; that he was asked by the judge whether or not he had formed or expressed any opinion as to the guilt or innocence of Bradford, or whether he was sensible of any bias or prejudice either for or against the said defendant, and that he answered that he had not formed or expressed any opinion as to Bradford's guilt or innocence, and was not sensible of any bias or prejudice. This evidence was objected to as not the best evidence, as secondary and hearsay. These objections are not tenable We are of opinion that these questions and answers were very properly proven by the Clerk and State Attorney who were present and heard them, or that they might have been proven by any competent witness who heard them. They were not matters of record. 2nd Archibald's Cr. Pr. and Pleading 1744.

The defendant offered to prove by Rev. J. T. Boone, the following: "I am pastor of the First Christian Church here. I know the defendant, and have known him for a long time. He has been a member of my church and as pastor I have had frequent occasions to see and observe him, and familiarize myself with his manners and habits. I have known him for several years, and have had frequent occasions to notice any peculiarities of mind which he might possess. I knew him just prior to the time he was

a juror in the Bradford case, and for some years before, and had noticed the apparent change in his mental condition from what it was formerly. He did and said a great many things which convinced me that he was not strong or sound mentally. I cannot just now name any specific things, but from my knowledge of him and acquaintance with him, I am satisfied that at said time he was not mentally responsible." The State objected to this testimony because the witness was not an expert, could not give his opinion, and had not named sufficient specific acts of the defendant as to his mental peculiarity upon which to base an opinion. This objection was sustained, and the defendant excepted to the ruling and assigns error thereon.

When we consider that in this case the charge was perjury committed by the defendant "knowingly, falsely, corruptly, wilfully and wickedly," it seems to us that the mental condition of the defendant at the time the alleged false oath was taken, and his physical condition as bearing on the mental—including his powers of memory, were proper subjects of investigation on his trial. It was not necessarily a question of his sanity or insanity. A man may be sane and yet by reason of illness or other cause have a very defective memory. McCord v. State, 83 Ga. 521.

In 2 Bishop's Criminal Law, Section 1045, Hawkins is quoted as follows: "It seemeth that no one ought to be found guilty (of this offence) without clear proof that the false oath alleged against him was taken with some degree of deliberation. For if upon the whole circumstances of the case it shall appear probable that it was owing rather to the weakness than perverseness of the party, as where it was occasioned by surprise, or inadvertency, or a mistake of the true state of the question it

cannot but be hard to make it amount to voluntary and corrupt perjury, which is of all cirmes whatsoever the most infamous and detestable." In Section 1046, Id. it is said: "Perjury is committed only where there is the intent to testify falsely." Our court has established the law here that "the physical or mental condition or appearance of a person, or his manner, habit or conduct may be proved by the opinion of an ordinary witness." Higginbotham v. State, 42 Fla. 573, 29 South. Rep. 410; Mitchell v. State, 43 Fla. 584, 31 South. Rep. 242; Fields v. State, 46 Fla. 84 (35 S. R. 185). See also Rogers on Expert Testimony (2nd ed.) pp. 9, 10 & 11. But in neither of these cases was the question one of mental responsibility by reason of insanity or unsoundness of mind. In cases of the latter kind a non-expert may give his opinion with the facts upon which his opinion is based. Armstrong v. State, 30 Fla. 170, 11 South. Rep. 618. If the tendency of the testimony of Rev. T. J. Boone had been simply to show a failing condition of mind and memory upon the part of the defendant, the evidence would have been proper, as bearing upon the question of the corrupt intent charged against him. But inasmuch as this testimony seems to have been intended to show more than this, viz: insanity in the defendant, we cannot say that the trial judge erred in ruling it out, because of the fact that Mr. Boone could not name any specific acts upon which he based his opinion of the unsoundness of mind of the defendant.

The seventh assignment of error is based on the refusal of the trial judge to instruct the jury to render a verdict of not guilty at the close of the evidence for the prosecution. This motion was not applicable to a criminal case and was properly refused. Boykin v. State, 40 Fla. 484, 24 South. Rep. 141; McCray v. State, 45 Fla.

80, 34 S. R. 5; Wilson v. State, 47 Fla. 118, 36 S. R. 580.

The eighth assignment is based on the refusal of the trial judge to give eight instructions requested by the defendant. We do not think it necessary to discuss these instructions and add to the bulk of this opinion, further than to say that we think, under the evidence, the defendant was entitled to an instruction requiring the jury to take into consideration the mental condition of the defendant whether failing or normal, his memory whether good or bad, as bearing upon the question of the wilful corrupt perjury charged against him, and the reasonable doubt of his guilt.

The ninth assignment of error is based on the refusal of the court to grant a motion in arrest of judgment. The grounds of the motion in arrest are, that, first, the verdict was illegal, and, second, that the defendant is not legally charged with the commission of any crime, and principally under the last, that the necessary elements of perjury are not set out with sufficient certainty and fullness to place the defendant on notice of the crime sought to be charged. It is argued that the information does not set out any facts to show that defendant at the time of taking the oath upon which the perjury is predicated had then any opinion or was then sensible of any bias or prejudice either for or against Bradford. We do not think any of these objections are sound, and that the court did not err in overruling this motion.

The tenth assignment of error is based on the ruling of the court denying the motion for a new trial. Among the grounds of this motion are these: That the verdict is contrary to the evidence, is contrary to law, and contrary to the law and evidence.

On the trial the State produced evidence directly tending to prove all the material allegations of the informa-

tion except the allegation that at the time the oath was taken upon which the perjury was predicated the defendant Leaptrot "was then and there sensible of bias and prejudice resting on his mind against the said Jake Bradford."

The jury were left to infer the existence of this alleged bias and prejudice from his previous statements made to F. D. Miller and T. H. Smith.

The defendant introduced on his own behalf the State witness, F. D. Miller, who testified as follows: "I am a practicing physician in Jacksonville, and have been for many years. I know the defendant, am well acquainted with him. Have had frequent occasion to see and observe him. I have attended and prescribed for him professionally on many occasions. He lives on my own place in the country. I see him often. He is very peculiar, and at times does a great many strange and odd things. He is very boisterous and garrulous, frequently flies into fits of anger and passion without cause. I have often see him in these outburts of passion when there was no cause for them, when he acted like a crazy man. I remember once that he wanted to kill all the chickens because some rooster pecked a hen. I have seen him fly off and threaten to do great harm, and many outrageous things without cause. He has many symptoms of a man of deranged mind. I certainly do not think that he is mentally sound or responsible. I look upon him as a man of unsound mental faculties. That is my opinion."

The bill of exceptions then shows that the defendant produced Dr. Stinson and five other witnesses and *offered to prove by them* certain facts bearing very materially upon the question of the mental condition of the defendant, but the bill of exceptions does not show whether this testimony was permitted to go to the jury,

or whether it was rejected. The same is true of the alleged evidence of the defendant himself. There is nothing in the bill of exceptions to show affirmatively that these witnesses testified before the jury in the trial of the case. Dr. F. D. Miller in his testimony given in behalf of the State had stated that Leaptrot had said to him that if taken on the jury in the Bradford case he would hang him; also stated that Leaptrot's statements were made openly and boldly in a talkative garrulous sort of way; that he knew the old man and did not pay much attention to his talk; that he thought it was simply idle and thoughtless remarks.

T. H. Smith, who testified for the State that Leaptrot had said if taken as a juror in the Bradford case he would hang that man, also said that he did not pay much attention to his talk; that it was openly and boldly stated; that it did not impress him as being serious; that he was talking in a loud, garrulous sort of way.

The State introduced no evidence in rebuttal of the testimony of Dr. Miller as to the unsoundness of mind of the defendant. Neither Dr. Miller nor Mr. Smith could fix the time when Leaptrot made the statements with accuracy. Smith was not certain whether it was before the first or last trial of Bradford. Dr. Miller said the statement was made "a month" or such a matter before the last trial of the Bradford case. The time of another conversation he did not give at all.

In view of the fact that Dr. Miller, the State witness, testified that Leaptrot was of unsound mental faculties, calling him an old man; that this testimony was not rebutted in any way whatever; that the alleged statements of Leaptrot were made at some indefinite time before the time when he was taken as a juror upon the trial of the Bradford case; that there was no direct evidence of any

kind, and no other evidence that his alleged statements showing that he was "then and there" when he took the voir dire oath, sensible of bias and prejudice resting in his mind against Jake Bradford, we are of opinion that there was at least such strong ground for a reasonable doubt of his guilt of wilful corrupt perjury that the court ought to have sustained the motion for a new trial. As well as being a matter of common observation, it is considered by both judges and scientific writers upon psychology, that after middle life the memory of an individual is not so tenacious of comparatively recent events as in the earlier periods of life, and certainly this is true where one's physical health is impaired by disease. 17 Cyc. 785, 787; Miller v. Cotten, 5 Ga. 341, text 348; Parke v. Foster, 26 Ga. 465, text 470; Dean v. Dean, 42 Or. 290, text 296, 70 Pac. Rep. 1039. The jury seem to have ignored the uncontroverted testimony of Dr. Miller, who was a witness for the State, as to the mental condition of the defendant, and the doctrine of this court is that where the verdict is so palpably against evidence, or against a very strong preponderance of evidence, that great injustice seems to have been done, leading to the conclusion that the verdict was the result of prejudice or excitement or other improper influences, there should be no hesitation about setting it aside. Wilson v. Dibble, 14 Fla. 47; Armstrong v. State, *supra*.

The judgment of the court below is reversed and a new trial awarded.

TAYLOR, P. J., and PARKHILL, J., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.