JAMES FAILS, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

1. It is no longer doubted now that in case of manifest necessity such as the sickness of the prisoner a mistrial may be ordered even in capital cases, and the discharge of the jury in such a case will not bar a subsequent trial upon the same indictment.

2. While the prisoner in the trial of a capital case has a right to be and must be present, yet, if the defendant becomes too sick to be present in court at every stage of the trial the case should be either temporarily passed to await his convalescence or a juror withdrawn and the case continued, and the subsequent conviction of the prisoner will not be set aside because he was not present at the discharge of the jury for said cause.

3. Where the record fails to show that the trial court refused to excuse from the jury a certain juror, error predicated thereon must fall.                                                    •

4. In the case of homicide it is essential to the admissibility of dying declarations that they were made under a sense of impending death, and this is a preliminary fact to be shown to the court by the party offering them.

5. Where the evidence does not call for or justify a charge upon the crime of murder in the third degree, a failure to charge thereon is not error.

This case was decided by Division B.

Writ of error to the Circuit Court for Dade County.

The facts in the case are stated in the opinion of the court.

*G. A. Worley*, for Plaintiff in Error;

*Park Trammell*, Attorney General, for the State.

PARKHILL, J.—The plaintiff in error was indicted for the murder in the first degree of one Joseph A. Hutto and convicted of murder in the second degree.

The court did not err in sustaining the demurrer to the plea of former jeopardy. This plea does not show former jeopardy. It was filed on the 2nd day of July, 1909, and

alleges that on the 5th day of March, 1909, the jury was regularly empanelled, chosen and sworn, the defendant was then and there placed in jeopardy, "and the State proceeded and introduced all of its evidence in chief against the defendant, and the State having rested its case, the defendant introduced testimony in his own behalf, whereupon the court ordered a view of the premises by the jury, and a view of the premises where the homicide was committed having been had by the jury having returned to the court house, the said cause was proceeded with until, on account of the sickness of the defendant, he being in a state of mental delirium brought on by high fevers, an adjournment was requested by the defendant until the following day that defendant might be in better physical shape to proceed with the trial, which request was by the court granted, and on the following day it was reported to the court by the county physician that the defendant was still sick and had a high temperature, and was not able to come into court, whereupon the court took a recess until two o'clock in the afternoon, and instructed the county physician to have in consultation an outside physician for the purpose of ascertaining the physical condition of the defendant, and upon opening of the court at two o'clock the physicians reported that they had made an examination of the defendant, and that defendant was not able to come into court and stand trial, and that in all reasonable probability the defendant would not be able to proceed with the trial without danger to his health or life, for two or three weeks, whereupon a juror was withdrawn from the box and a mistrial directed by the court, and the jury discharged from the consideration of said cause by the court, all of which was done with the consent of defendant's counsel, but in the absence of the defendant, and while defendant was not in attendance

upon the court, and while defendant was sick and confined to his bunk in the county jail, away from the court house and the defendant at that time had no knowledge of what was being done, and did not and could not give his consent personally to the granting of the mistrial in said cause, and this defendant now says that his jeopardy was complete, and that the discharge of the jury and the ordering of a mistrial in his absence entitles him to a verdict of not guilty for that under the constitution of the State of Florida, he must not twice be put in jeopardy for the same offense."

It is no longer doubted now that in cases of manifest necessity such as the sickness of the prisoner a mistrial may be ordered even in capital cases, and the discharge of the jury in such a case will not bar a subsequent trial upon the same indictment. Ellis v. State, 25 Fla., 702, 6 South. Rep., 768; Adams v. State, 34 Fla., 185, 15 South. Rep., 905; Smith v. State, 40 Fla., 203, 23 South. Rep., 854.

In the event the prisoner, in the progress of the trial, becomes unable to proceed with the trial by reason of sickness, his jeopardy which had commenced at once ceases. Hughes' Crim. Law & Proc., chapter 2624; 1 Bishop's New Crim. Law, chapter 1032.

We think the sickness of the defendant being such that the trial could not go on presented a case of manifest necessity sufficient for the court to discharge the jury and declare a mistrial. 10 Ann. Cas., 1086.

Neither will this conviction be set aside because the defendant was not present at the discharge of the jury. While, as a result of the humanity of the law, the prisoner in the trial of a capital case has a right to be, and must be present, yet, if the defendant becomes too sick to be present in court at every stage of the trial the case should be either temporarily passed to await his conval-

escence or a juror withdrawn and the case continued. Brown v. State, 38 Tex., 483.

This arises also from the humanity of the law and from the necessity of the case.  Tender regard for the humanity of the law would require that a prisoner should not be brought into court if he is sick and his life would be endangered merely to declare a mistrial.  Of what assistance to his counsel would a prisoner be at such a time?

So the jury have been discharged by the court where a prisoner was found to be insane, 1 Hale 35; or in a fit, Leach, 443; or be taken in labour, Foster, 76.  In all these cases it was ruled that the court may discharge the jury and remand the prisoner for another trial.  Rex v. Edwards, 3 Campbell's Nisi Prius Reports, 207, note.

We find nothing in the record to show that the court refused "to excuse from the jury the juror Bowman," and error predicated thereon must fall.

Under the fifth and sixth grounds of the motion for a new trial it is contended that the court erroneously admitted in evidence the alleged dying declarations of the deceased because the evidence shows that at the time of said declarations the deceased did not believe he was in *articulo mortis*, that he was excited and that as a matter of fact he was not dying.

It is undoubtedly true that in the case of homicide it is essential to the admissibility of dying declarations that they were made under a sense of impending death, and this is a preliminary fact to be shown to the court by the party offering them.  Roten v. State, 31 Fla., 514, 12 South. Rep., 910; Dixon v. State, 13 Fla., 636.

We think the evidence shows that at the time the declarations were made the deceased not only evidently considered himself in imminent danger but that he evidently believed he was without hope of recovery.  So .this contention fails.

The evidence did not call for or justify a charge upon the crime of murder in the third degree.

We discover no reversible eror in the instructions given or refused.

The judgment is affirmed.

TAYLOR and HOCKER, J. J., concur.

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.