(53 South. 379.)

No. 17,891.

CONSUMERS' FERTILIZER CO. v. STATE BOARD OF AGRICULTURE AND IMMIGRATION et al.

(June 20, 1910. Rehearing Denied Oct. 17, 1910.)

*(Syllabus by the Court.)*

1. AGRICULTURE (§ 7*)—FERTILIZERS—ANALYSIS.

The analysis of commercial fertilizers provided by section 3, Act No. 126, p. 186, of 1898, is for the benefit of purchasers for use, and there is no warrant for sending to buyers analyses of a mixture of different samples from different sales made by the same dealer, and forwarded by the local inspector for analysis as required by the said section.

[Ed. Note.—For other cases, see Agriculture, Cent. Dig. §§ 13, 14; Dec. Dig. § 7.*]

2. AGRICULTURE (§ 7*)—FERTILIZERS—ANALYSIS—PUBLICATION.

The Commissioner of Agriculture may, under section 9 of Act No. 126 of 1898, analyze any fair samples of fertilizer he may select and publish the result of the analysis for the information of the public, and his discretion in this respect cannot be controlled by the courts.

[Ed. Note.—For other cases, see Agriculture, Cent. Dig. §§ 13, 14; Dec. Dig. § 7.*]

Monroe, J., dissenting.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Bill by the Consumers' Fertilizer Company against the State Board of Agriculture and Immigration and others. Judgment for defendants, and plaintiff appeals. Reversed in part, and affirmed in part, and remanded.

T. Jones Cross, for appellant. Walter Guion, Atty. Gen., and R. G. Pleasant, for appellees.

LAND, J. Plaintiff sought to enjoin the defendant from printing and publishing certain analyses of commercial fertilizers made and sold by the plaintiff during the season of 1909, and from sending the same to the purchasers, on the ground that the board chemist had mixed the samples of different lots

sold to different purchasers, and analyzed a sample of the mixture, with the result that the relative and commercial value of the fertilizers sold by plaintiff had been misrepresented, to plaintiff's great prejudice.

The allegations of the petition, with the exhibits attached, show that the chemist, in some cases, analyzed a sample from each lot, and in other cases analyzed the mixed samples of a number of lots. In one instance the sample from a mixture of nine different lots was analyzed. This method gives the average ingredients of two or more lots, and, plaintiff contends, misrepresents the quality of the fertilizer in each lot, by ignoring quantity and relative value.

Defendant's answer is, in substance, that under the statute the whole matter of sampling fertilizers and publishing the result of analyses is within the discretion of the board.

The judge below denied a preliminary injunction, and the plaintiff has appealed.

This case falls within the purview of Act No. 126, p. 186, of 1898, defining the duties and powers of the State Board of Agriculture and Immigration, and the Commissioner thereof, relative to the manufacture and sale of fertilizers.

Section 2 of the statute requires the manufacturer or dealer in commercial fertilizers to submit to the Commissioner for inspection and analysis fair samples of the goods proposed to be manufactured or sold, with a statement setting forth the amount of certain ingredients, such as nitrogen, phosphoric acid, and potash, therein contained, and makes such statement operate as a guaranty to the purchaser that every package of such fertilizer contains not less than the amount of each ingredient set forth in the statement. The same section imposes an inspection fee of 25 cents per ton upon any fertilizer sold for the use in this state, to be paid by the seller, which shall cover the cost of inspection and analysis made by the Commissioner or official chemist, or at the request of either the seller or the buyer.

Section 3 provides for the appointment of local inspectors throughout the state, and for the inspection by them of all lots of fertilizers sold, before delivery or shipment to the purchaser, and that the inspector "shall proceed to sample said lot and shall forward to the Commissioner such sample for analysis."

Section 7 provides that each barrel, bag, or package of fertilizer or chemical shall have printed thereon or attached thereto a statement containing a true analysis of such fertilizer or chemical, showing the per cent. of ingredients as required by section 2.

Section 9 reads as follows:

"That the Commissioner may inspect or cause to be inspected and may obtain or cause to be obtained, at his discretion, fair samples of all fertilizers sold or offered for sale in this state, or offered for sale or sold for use in this state, and shall have them analysed by the official chemist, and shall publish the analysis for the information and protection of the public."

The statute provides, first, for the analysis of samples submitted by the manufacturer or dealer; second, for the analysis of samples taken by the inspectors from each lot sold; and, third, for an inspection and analysis of fair samples of all fertilizers sold or offered for sale, and for the publication of the analysis for the information and protection of the public. It is charged in the petition that the inspector's samples of different lots of fertilizers sold by the plaintiff have been mixed together, and the mixture analyzed, and the resulting analysis mailed to each buyer represented in the mixture, and have also been printed for general circulation and distribution.

Section 3 provides for the analysis of each lot sold, identified by number, the names of vendor and vendee, brand, weight, and description of packages, etc.

Under section 2 an analysis of each lot sold is mandatory, at the request of either

the seller or the buyer. The analysis of each lot is for the information and benefit of the seller and buyer. Hence an analysis of a mixture of samples of different lots should not be substituted for an analysis of each lot sold.

Section 9 authorizes the analysis and publication of fair samples of all fertilizers sold or offered for sale for the information of the public. The discretion of the board under section 9, cannot be controlled by the courts.

On page 5 of the brief filed by the Attorney General appear two tables as follows, to wit:

These tables are not in the record, and, therefore, cannot be considered.

After giving the case our best attention, we conclude that the plaintiff is entitled to a preliminary injunction as to the sending of analyses of mixtures of different lots of fertilizers to the customers of the plaintiff.

It is therefore ordered that the judgment below be amended and reversed in that respect, and it is now ordered that writs of injunction issue, on plaintiff's giving bond and security according to law in the sum of $500, inhibiting and restraining the defendants and each of them from sending in any form analyses of mixtures of different samples of

### COMPLETE FERTILIZERS.
#### Consumers' Fertilizer Co.
#### TRI-STATE CORN.

| | Station Number. | No. of Samples Composited. | PHOSPHORIC ACID. | | | | | Nitrogen. | Ammonia. | Potash. | Comparative Value per Ton. |
| | | | Water Soluble. | Reverted. | Insoluble. | Total. | Available. | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Guaranteed | .... | .. | 5.00 | 1.50 | 1.00 | 7.50 | 6.50 | 2.90 | ... | 0.45 | $16.76 |
| Found | 4861 | 1 | 5.78 | 2.68 | 0.37 | 8.83 | 8.46 | 2.05 | 2.49 | 0.45 | |
| | 4963 | 1 | 4.55 | 3.01 | 0.82 | 8.38 | 7.56 | 1.10 | 1.34 | 0.62 | |
| | 5202 | 2 | 4.13 | 2.68 | 0.39 | 7.20 | 6.81 | 2.20 | 2.68 | 0.68 | |
| | 5430 | 1 | 5.18 | 0.95 | 1.22 | 7.35 | 6.13 | 2.70 | 3.28 | 0.81 | |
| | 5664 | 1 | 5.48 | 2.97 | 0.55 | 9.00 | 8.45 | 2.70 | 3.28 | 1.36 | |
| | 5876 | 2 | 5.33 | 3.08 | 0.44 | 8.85 | 8.41 | 2.45 | 2.98 | 0.81 | |
| | 6004 | 1 | 4.73 | 3.46 | 0.56 | 8.75 | 8.19 | 2.79 | 3.40 | 1.12 | |
| | 6144 | 2 | 4.40 | 2.69 | 0.66 | 7.75 | 7.09 | 1.75 | 2.13 | 0.64 | |
| | 6591 | 1 | 3.58 | 2.78 | 0.57 | 6.93 | 6.36 | 2.73 | 3.32 | 0.76 | |
| Average | .... | 12 | 4.80 | 2.70 | 0.62 | 8.12 | 7.50 | 2.27 | 2.76 | 0.81 | $16.08 |

#### TRI-STATE COTTON.

| | Station Number. | No. of Samples Composited. | Water Soluble. | Reverted. | Insoluble. | Total. | Available. | Nitrogen. | Ammonia. | Potash. | Comparative Value per Ton. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Guaranteed | .... | .. | 7.50 | 2.00 | 1.00 | 10.50 | 9.50 | 1.85 | ... | 0.15 | $15.88 |
| Found | 5031 | 1 | 5.78 | 2.64 | 0.58 | 9.00 | 8.42 | 1.52 | 1.85 | 0.98 | |
| | 5201 | 5 | 7.13 | 2.95 | 0.52 | 10.60 | 10.08 | 1.48 | 1.80 | 1.07 | |
| | 5403 | 2 | 7.75 | 2.85 | 1.03 | 11.63 | 10.60 | 1.85 | 2.25 | 0.90 | |
| | 5576 | 5 | 6.95 | 2.84 | 0.91 | 10.70 | 9.79 | 1.85 | 2.25 | 0.74 | |
| | 5789 | 7 | 6.70 | 3.56 | 0.67 | 10.93 | 10.26 | 1.65 | 2.01 | 1.06 | |
| | 6007 | 6 | 6.85 | 3.54 | 0.69 | 11.08 | 10.39 | 1.85 | 2.25 | 0.84 | |
| | 6143 | 5 | 6.73 | 3.33 | 0.87 | 10.93 | 10.06 | 1.85 | 2.25 | 0.68 | |
| | 6407 | 2 | 6.73 | 3.84 | 0.56 | 11.13 | 10.57 | 1.48 | 1.80 | 1.12 | |
| | 6534 | 1 | 7.05 | 3.56 | 0.89 | 11.50 | 11.61 | 1.55 | 1.88 | 0.97 | |
| Average | .... | 34 | 6.85 | 3.23 | 0.75 | 10.83 | 10.09 | 1.68 | 2.04 | 0.93 | $16.83 |

fertilizers as shown on the exhibits annexed to plaintiff's petition to purchasers from the plaintiff, and that, as thus reversed in part and amended, the judgment below be affirmed; and it is further ordered that this cause be remanded for further proceedings according to law.

MONROE, J., dissents.