WILL GRACE, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

### Opinion Filed November 24, 1919.

1. Where the record does not exhibit the entire charge given to the jury, the appellate court cannot say that the trial court erred in refusing to give a specific charge requested by the defendant.

2. Upon an indictment for an assault with intent to commit murder in the first degree, if the evidence would be sufficient to sustain a conviction of assault with intent to commit murder in either the first or the second degree, a finding of guilt of an assault to commit murder in the third degree is permissible under the statutes.

A Writ of Error to the Circuit Court for Leon County; E. C. Love, Judge.

Judgment affirmed.

*Greene S. Johnston, Jr.,* and *W. C. Hodges,* for Plaintiff in Error;

*Van C. Swearingen,* Attorney General, and *D. Stuart Gillis,* Assistant, for the State.

WHITFIELD, J.—Will Grace was indicted for an assault upon Beverly Taylor with intent to commit murder in the first degree with a gun, and was convicted of an assault with intent to commit murder in the third degree.

On writ of error it was argued that the verdict is contrary to law, to the evidence and to the charge of the court, and that the court erred in refusing a requested charge. Without deciding that the refused charge was

correct in form and applicable to the evidence, the refusal to give it will not be reviewed here, since it appears that other charges were given but they are not included in the transcript. A correct charge covering the point may have been given by the court.

Where the record does not exhibit the entire charge given to the jury, the appellate court cannot say that the trial court erred in refusing to give a specific charge requested by the defendant. Weaver v. State, 58 Fla. 135, 50 South. Rep. 539; Albritton v. State, 54 Fla. 6; 44 South. Rep. 745; Reynolds v. State, 34 Fla. 175, 16 South Rep. 78.

The main contention is that the evidence does not show an assault to commit murder in any degree; and that consequently the verdict has no support in the evidence.

It appears that the defendant and the person assaulted had a difficulty and separated. Soon thereafter the same day the assault here alleged occurred. The prosecuting witness testified as to the difficulty in which he threw the defendant down on the ground, and that "I did not hit him and he did not hit me. We got up and all of us went on down to Will's house together. When we got there I went back to see Mr. ———, one of the boss men at the pecan farm. When I was on my way home as I passed Will Grace's house he shot me. I was in front of his house on the way home. I was not doing anything to him. This was in Leon County, Florida, at the pecan farm, in December, 1918. It was first dark. I was in the path that all of us who live in the houses near Will Grace travel. I was on my way to my house and had to pass Will Grace's house to get to my house. I did not go out of the path toward Will Grace's house, but was right in the path near the fence corner when I was shot. * * * I did not have any weapon of any kind with me."

The defendant's wife testified that after the difficulty

between the defendant and the person assaulted they came to the place where she and another woman of the party had preceded them, and that "When they came up we went shaming them about fussing and cussing each other, as they had been such good friends. Will said 'I am not bothering Bev. He is the one that is fussing.' This seemed to make Bev. mad and he started away toward Mr. ——— house, saying, 'Just stay here until I get back and we'll settle it all.' We three went on in the house. In a little while Bev. came back and yelled out, 'Bud, O, Bud, come out here; I've got mine, now God dam you get yours and we'll die together.' He was coming toward the house. Will jumped out of the back window and I heard a shot. I didn't know who was shot. I did not see the shooting. I only heard one shot. The shot was fired almost immediately after Will jumped out of the window."

The defendant testified: "When we got home my wife and Lilla got after us for quarreling when we were good friends. I told them it wasn't me; that I was not bothering Bev. He got mad and told me to wait there until he come back and we'd settle it all. He went up toward Mr. Ben's house; he had told me before that he kept his gun there. He came back in a few minutes yelling as loud as he could 'Bud, O, Bud, come on out—I've got mine, you get yours, God dam you and we'll die together.' He was coming towards the house and cursing all the while. It was dark—I couldn't see him to tell whether he had a gun. I could just discern his form coming toward me. He told me that he had been in several fights and had always come out the big end. A short time before this man had shot into a house with some people in it and I was afraid he would get me the same way. I jumped out of the back window and ran around the corner of the

house. He was coming toward me cursing and saying he would get me. I was afraid of him so I shot him then. I shot him because I was afraid he would take my life or de me great harm. He had told me several times that he did not pick his men; that he always got the best of them both white and black. I shot him in self-defense."

There was other testimony tending to show a threatening attitude on the part of the prosecuting witness and disclosing his reputation as a dangerous man. The jury determined the weight of the testimony.

If the evidence does not show a premeditated design to effect death, it affords a legal basis for a finding of an unlawful assault with intent to commit a homicide by an act imminently dangerous to another and evincing a depraved mind regardless of human life, which would have been murder in the second degree if the death of the assaulted person had ensued. Under the statutes this is sufficient to sustain the verdict of guilty of an assault with intent to commit murder in the third degree. See Williams v. State, 41 Fla. 295, 26 South. Rep. 184; Sec. 4007 Gen. Stats. 1906, Compiled Laws 1914; Feagle v. State, 55 Fla. 13, 46 South. Rep. 182.

Judgment affirmed.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.