FRANCES HANCOCK, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

En Banc.

Opinion Filed July 23, 1925.

1. Parol testimony merely establishing the existence of a written instrument, as distinguished from its terms, contents or legal effect, is admissible.

2. Under proper circumstances, secondary or parol evidence of the contents of a written instrument may be given when the original instrument or its contents or legal effect are not directly involved in the issues in the case, but relate merely to collateral facts.

3. Parol testimony which does not purport to be primary testimony of the contents of a written instrument, but which forms a part of a conversation between the witness and another person, in the presence and hearing of the defendant, in which reference was made to a failure to fulfill the provisions of the instrument, neither the ·terms, contents nor legal effect of such written instrument being directly involved in the issues, but merely collateral thereto, is admissible.

4. In a prosecution for assault with intent to commit murder, the assault being committed by shooting the victim with a pistol, testimony that a pistol offered in evidence by the State is the same pistol taken from the hand of the defendant by the witness immediately after the assault and while the barrel of the pistol was still smoking, and that it is then in the same condition as when the assault was committed, is sufficient proof of identity and connection with the crime to admit the pistol in evidence.

5. The regulation of the order of the introduction of trial evidence rests within the sound discretion of the trial court and the exercise of such discretion will not be interfered with by the appellate court unless clearly abused.

6. In his closing argument to the jury, the prosecuting attorney stated that when he went over the testimony submitted to him as the prosecuting attorney of the county, in his judgment he was warranted in filing the information used in this case. *Held*, that the remark was not beyond the legitimate scope of the arguments of counsel to the jury, since it stated no more than was already before the jury by the record.

7. Under an indictment for an assault to commit murder in the first degree, the defendant may be convicted of an assault with intent to commit manslaughter.

8. When a defendant is tried upon an information charging assault with intent to commit murder in the first degree, and is convicted of assault with intent to commit manslaughter, there being no evidence that if the assault with which the defendant was charged had resulted in the death of the victim, the offense would have been murder in the third degree, it was not error for the trial court to omit to charge upon the offense of murder in the third degree.

9. It is in the province of the jury to decide conflicts in the testimony, and when there is ample evidence from which the jury might have found or inferred all the essential elements of the crime of which they found the defendant guilty, and it does not appear that the verdict is so manifestly against the weight of the evidence as to convince the appellate court that the verdict is either wrong or unjust, or that the jury was influenced by considerations other than the evidence, this court will not interfere and set aside the verdict of the jury.

A Writ of Error to the Criminal Court of Record for Dade County; Tom Norfleet, Judge.

Affirmed.

*G. A. Worley, & Son,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *J. B. Gaines,* Assistant, for the State.

STRUM, J.—Upon an information charging assault with intent to commit murder in the first degree, the plaintiff in error (hereinafter designated as the defendant) was tried and convicted of the offense of assault with intent to commit manslaughter. To that judgment writ of error was taken.

The evidence discloses that George H. Hancock and J. F. Halsema, the former a son of the defendant, were purchasing from Dr. Wildman, the victim of the assault, a drug

store located in Miami, Florida. The purchasers had been given possession of the store and were operating and managing the same, the defendant participating therein. A large part of the purchase price had been paid, the defendant contributing some of the money, but a substantial portion of the purchase price remained unpaid at the time of the assault by the defendant upon Dr. Wildman. On March 27, 1922, Dr. Wildman, claiming that the purchasers had violated the terms of sale, entered the drug store and advised the defendant and one of her sons that he had come to take possession thereof. Dr. Wildman immediately commenced waiting on customers and otherwise conducting the business of the store to the exclusion of the purchasers. The defendant, apparently reluctant to yield possession, remained in the store until it was closed for the night. The next morning defendant returned to the store and there ensued a more or less spirited and bitter discussion between the defendant and Dr. Wildman, resulting in an encounter between them about noon time, the result of which was the shooting of Dr. Wildman by the defendant.

At the trial, when Dr. Wildman was testifying concerning the incidents leading up to and immediately preceding the assault, he was permitted, over the objection of the defendant, to testify as follows with reference to the sale of the drug store: ''Q. Did you sell or agree to sell it?'' ''A. I signed an agreement to sell it.'' ''Q. Who to?'' ''A. George H. Hancock and J. F. Halsema.'' In relating a conversation between the witness and George H. Hancock which occurred in the presence of the defendant, when Dr. Wildman entered the drug store to take possession, Dr. Wildman, over the objection of the defendant, further testified: ''I said, since leaving here I have learned that you are two months in arrears with your rent, the lease still being in my name, never having been transferred to them

(the purchasers) and I had written title to the property there, and they in the contract were supposed to keep up the rent and all current expenses. I told him (Mrs. Hancock's son) I would have to exercise my option in the matter in that they were in arrears in their payments to me." The action of the trial court overruling the objections of defendant to this testimony constitutes the first assignment of error, the objection being that the written instruments referred to would be the best evidence of their contents, and that the admission of the testimony violates the best evidence rule.

The testimony first quoted merely establishes the existence of a written instrument as distinguished from its terms, contents or legal effect. It is clearly admissible. Seymour v. State, 66 Fla. 133, 63 South. Rep. 7; Wilson v. Jernigan, 57 Fla. 277, 295, 49 South. Rep. 44; Cross v. Aby, 55 Fla. 311, 45 South. Rep. 820; 22 C. J. 987.

Where the terms or contents of a written instrument are directly involved in the issues, the instrument itself is undoubtedly the best evidence of its contents. In instances where the written instrument, or its contents, is merely *collateral*, parol testimony referring to its contents is not necessarily incompetent. Under proper circumstances, secondary or parol evidence of the contents of a written instrument may be given when the original instrument or its contents or legal effect are not directly involved in the issues in the case, but relate merely to collateral facts. Camp v. State, 58 Fla. 12, 50 South. Rep. 537; Griffin v. State, 129 Ala. 92, 29 South. Rep. 783; Williams v. State, 149 Ala. 4, 43 South. Rep. 720; State v. McKinnon, 99 Me. 166, 58 Atl. Rep. 1028; 25 A. M. & Eng. Ency. Law, 173; 1 Greenleaf Evidence, Sec. 89. Here the issue was whether or not the defendant had committed an unlawful assault upon Dr. Wildman. The fact that certain contractual relations ex-

isted between Dr. Wildman and defendant's son was not
the foundation of the charge contained in the information,
nor was the existence of the contract, or its contents, or
legal effect, involved in the issues. These matters were mere-
ly collateral, tending to show circumstances out of which
arose the difficulty which led to the assault. The contract
and the lease referred to, even if proved by the written in-
struments themselves, could have properly exerted no mate-
rial influence in the determination of the issues before the
jury. Furthermore, the latter testimony of the witness above
quoted, does not purport to be primary testimony of the
contents of any written instrument, but forms a part of a
conversation between the witness and a son of the defend-
ant, in the presence and hearing of the defendant, in which
reference was made to a failure to fulfill the provisions of a
written instrument. Under the circumstances above stated,
there was no error in overruling the objections made to this
testimony.

The next assignment relates to the admission in evidence,
over the objection of defendant, of a pistol with which it is
said the assault was committed. One of the witnesses for
the State, a police officer, testified that he went to the scene
of the shooting immediately after it occurred and that when
he arrived there he saw defendant walking from the rear
towards the front of the drug store; that he met defendant
about the middle of the store; that she had the gun offered
in evidence in her hand, the barrel still smoking; that he
took the pistol away from defendant and turned it over to
a deputy sheriff who was present; and that to the best of the
witness' belief, the pistol offered in evidence was the same
pistol. The deputy sheriff who received the pistol from the
police officer identified it as the same pistol received by him.
A second police officer also identified the pistol as being the
weapon that was taken away from the defendant in his pres-

ence immediately after the assault, further testifying that the pistol, when offered in evidence, was in the same condition as when it was taken away from defendant. This evidence strongly tends to establish the fact that the pistol offered in evidence was the same weapon with which the assault was committed by the defendant, and that it was in the same condition as when the assault was committed. It was therefore properly admitted in evidence. Williams v. State, 45 Fla. 128, 34 South. Rep. 279; People v. Bonier, 189 N. Y. 108, 81 N. E. Rep. 949; Commonwealth v. Bober, 59 Penna. Supr. Ct. Rep. 573; 16 C. J. 618.

In rebuttal, the State recalled one of the police officers above mentioned, who testified that the pistol which he took away from the defendant looked like it had been recently oiled within a day or two; that he got grease on his hands when he received it from the hands of the other police officer at the scene of the assault, and that it was rather rusty; that he got some of the rust on the same trousers which he had on when testifying. This testimony was objected to on the ground that it was not in rebuttal of any testimony introduced by the defendant. This testimony, taken in connection with other testimony introduced by the State, was unquestionably relevant. The regulation of the order of the introduction of trial evidence rests within the sound discretion of the trial court and the exercise of such discretion will not be interfered with by the appellate court unless clearly abused. Barker v. State, 74 Fla. 95, 76 South. Rep. 676. It is by no means plain that this testimony was not properly in rebuttal of certain testimony of the defendant with reference to the circumstances under which she procured the pistol at the time of the assault. Assuming, however, that this testimony might have been more properly introduced in the State's case in chief, we do not think its admission in the rebuttal testimony was either harmful or

prejudicial to defendant. Certainly its introduction at such time, under the circumstances shown by the record, was not an abuse of discretion by the trial court.

During his closing argument to the jury, the County Solicitor, representing the State in the trial, stated that when he went over the testimony submitted to him as the prosecuting attorney of the county, in his judgment he was warranted in filing the information used in this case. Defendant objected to this language. The trial judge then said: "The objection is overruled, but the jury will be instructed at this time that they are not to be governed in their deliberation by opinion of counsel in reference to the guilt or innocence of this defendant. It is your province to pass upon the defendant's guilt or innocence upon the testimony exclusively, and the law as given you by the court, and the opinions expressed by either counsel are not to govern you at all in arriving at your verdict." The county solicitor expressed no opinion as to the guilt or innocence of the accused. His statement was that when he went over the testimony submitted to him, in his judgment he was warranted in filing the information used in this case. Such assertion was nothing more than was before the jury by the record itself. The information, previously read to the jury, contained the usual affidavit of the county solicitor "That the allegations as set forth in the foregoing information are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged." Although there is some difference in the language, the two expressions convey substantially the same meaning. The remark of the county solicitor was a somewhat unusual one, but we can not see that it is beyond the legitimate scope of the arguments of counsel to the jury. See Washington v. State, 86 Fla. 533, 98 South. Rep. 605, 609; Graham v. State, 72 Fla. 510, 73 South. Rep. 594. However, if there

was anything in the remark harmful or prejudicial to the defendant, it was cured by the instruction given to the jury by the court at the time the remark was made.

Amongst other things, the court instructed the jury, in effect, that the charge contained in the information embraces assaults to commit certain felonies of lesser degree than murder in the first degree, to-wit, assault with intent to commit murder in the second degree, assault with intent to commit manslaughter, and aggravated assault. The correctness of this charge is questioned by the sixth assignment of error. The charge, taken together with the other charges in the case, was not erroneous. Under an indictment for an assault to commit murder, the defendant may be convicted of an assault with intent to commit manslaughter. Griffin v. State, 73 Fla. 79, 72 South. Rep. 474; Kelley v. State, 78 Fla. 636, 83 South. Rep. 506.

Error is also assigned on certain other charges given by the court. We have examined with care all the charges given in this trial. Considering the charges as a whole (See Graham v. State, 72 Fla. 510, 72 South. Rep. 594) we find them to be without material error. The charges fully and fairly state the law pertaining to the issues within the scope of the evidence.

Defendant also assigns as error the failure of the trial court to charge the jury upon the elements constituting murder in the third degree. Assuming that under certain circumstances a conviction of the offense of assault with intent to commit murder in the third degree might be sustained (See Grace v. State, 78 Fla. 486, 83 South. Rep. 271, and Tillman v. State, 81 Fla. 558, 88 South. Rep. 377), this record is totally lacking in evidence that if the assault with which the defendant is charged had resulted in the death of the victim, the offense would have been murder in the third degree, Under such circumstances, it was not error for the

trial court to omit to charge upon the offense of murder in the third degree. Fails v. State, 60 Fla. 8, 53 South. Rep. 379. Furthermore, defendant was convicted of a lower degree of crime, to-wit, assault with intent to commit manslaughter.

The motion for a new trial raises the sufficiency of the evidence, and the order of the trial Judge overruling the same is assigned as error. There were no actual eye-witnesses to the assault other than Dr. Wildman and defendant, who were the principals. The testimony of these two witnesses is flatly contradictory upon many material points. If the jury believed the State's witnesses, there is ample testimony to sustain the conviction. It is the province of the jury to decide such conflicts, and where there is ample evidence from which the jury might have found or inferred all the essential elements of the crime of which they found the defendant guilty, and it does not appear that the verdict is so manifestly against the weight of the evidence as to convince the appellate court that the verdict is either wrong or unjust, or that the jury was influenced by considerations other than the evidence, this court will not interfere and set aside the verdict of the jury. Blocker v. State, decided at this term, and cases there cited. See also Barker v. State, 74 Fla. 95, 76 South. Rep. 676. In making the assault, the defendant may have acted under stress of great provocation, real or fancied, but the facts disclosed by the evidence are not such as would in law justify such an assault upon the prosecuting witness, if it occurred in the manner and under the circumstances shown by the State's evidence, which the jury apparently believed to be true.

Finding no error, the judgment is affirmed.

WEST, C. J., AND WHITFIELD, TERRELL AND BROWN, J. J., concur.