231 So.2d 265 (1970)
J.P. LeSUER and Mary LeSuer (Clinton Ingram, et al.), Appellants,
v.
STATE ROAD DEPARTMENT of Florida, an Agency of the State of Florida, and Bay County, a Political Subdivision of the State of Florida, Appellees.
No. J-489.
District Court of Appeal of Florida, First District.
February 12, 1970.
*266 Richard T. Earle, Jr., St. Petersburg, for appellants.
P.A. Pacyna, Tallahassee, for appellees.
SPECTOR, Judge.
Defendants in a condemnation proceeding seek reversal of a final judgment entered pursuant to a jury verdict.
Two questions are presented for our consideration. First, it is urged that the jury's award is insufficient because it failed to include any amount for business damage that was allegedly sustained by appellants. Secondly, it is urged that reversible error was committed by refusing to give appellants' requested instruction number three. Said requested instruction related to business damage.
The record reflects that the State Road Department and Bay County filed an action to condemn the front 27 feet of appellants' property which had a frontage of 205 feet on U.S. Highway 231 in Bay County. The amount of land taken was *267 .14 acre. The parent tract was 5.86 acres on which appellants operated a business consisting of buying and selling scrap metal, new and used automotive parts and automobile repairing. In operating the business, appellants utilized seven buildings, several concrete platforms, a metal press, truck weighing scales, and an open storage area for wrecked automobiles and the resultant scrap metal. A portion of the building which housed the automobile repair facilities was situated within the taking line.
By their answer, appellants alleged that they would incur business damages as a result of the taking as they were permitted to do by the provisions of Section 73.071(3) (b), Florida Statutes, F.S.A. It was alleged and proved that appellants conducted the said business for more than five years so as to make the statute applicable.
The condemnors called one value witness, a Mr. Noland, who was qualified as a real estate appraiser. Mr. Noland testified that the land to be taken, that is, the 27-foot strip along the highway had a value of $1,720. He further testified that the taking would necessitate cutting a part of the front of the building used for automobile repairs. The right-of-way line would intersect the building about the middle of the front and on a slight diagonal so as to necessitate cutting off a portion of the front of the building. Noland testified that the cost of cutting off and replacing that portion of the building was $3,193.20. Noland also testified that the taking would require relocation of the truck scales at a cost of $6,440 and relocation of a fence for $150 and moving inventory also at a cost of $150. These items of damages came to $11,653 and Noland testified that upon the accomplishment of these changes, the property would be restored to its original use and utility. The jury returned an award of $20,750. Noland did not testify as to any business damages, stating that his appraisal related only to the value of the land taken and the cost of restoring to former use those facilities on appellants' property which were damaged or had to be moved as a result of the spacing changes made by the taking.
Appellants' testimony was to the effect that the entire building referred to above had to be demolished and rebuilt, the scales had to be moved further back than Noland had stated, the press had to be relocated, a cutting machine referred to as a "snippie" had to be moved and that all of this moving and shifting would require relocating the place where the wrecked cars and scrap were stored and that the only suitable place on which that storage function could be performed was a swampy area along the northerly side of appellants' tract. The muck would have to be removed from the swamp and then fill dirt put in place. Appellants produced several witnesses as to the cost of accomplishing the aforementioned relocations, reconstructions, and swamp filling. The total testified to by them ranged from approximately $65,000 to $87,000. Each of the appellants' witnesses as to the cost of relocation of the scales, press, snippie, filling in the swamp and demolishing and reconstructing the repair garage building stated that they were not testifying as to the need for the work to be done, but only as to the cost thereof in the event it were done.
Mr. LeSuer testified that the changes discussed above were necessary and that if they were not made the business would be reduced to a mere salvage yard operation with an attendant reduction in profits. Mr. LeSuer testified that the annual net profit that he could expect from the business was $10,000 or some $835 per month. He also testified that the moving and filling and rebuilding he contends is necessary could be accomplished in three months.
In appellants' argument in support of the first ground for reversal it is contended that the minimum of $65,000 that it would cost to relocate the facilities in his business on that portion of his property not taken are business damages and therefore *268 the jury's verdict had to be at least in that amount in accordance with the rule that the jury cannot ignore evidence of business damages. We cannot agree with this thesis. The cost of effecting physical changes or modifications in the premises necessitated by a taking are in the nature of damages to the remainder or severance damages, not business damages. The latter class of damages within the meaning of Section 73.071(3) (b), Florida Statutes, F.S.A., are more in the nature of lost profits attributable to the reduced profit-making capacity of the business caused by a taking of a portion of the realty or improvements thereon. A typical example of such business damages was before this court in Sallas v. State Road Department, 220 So.2d 378 (Fla.App. 1969).
There the operator of a gasoline service station business produced witnesses who testified that because of a taking of a portion of the station frontage and the attendant relocation of his gasoline pumps the volume of business that he could do as operator of the business would be lowered because of the reduced capacity of the station to accommodate customer traffic resulting in reduced sales. In Sallas, there was clear evidence of business damages in the nature of reduced profits, and we reversed for a new trial on the issue of business damages contrary to the evidence. In the case at bar, appellants contend that they presented uncontroverted evidence of business damage and therefore the jury should have awarded no less than such uncontroverted business damage. The fallacy in appellants' argument is that the damages to which they testified, that is, the cost of relocating and rebuilding the various facilities which constitute the claimed business damages, are more in the nature of severance damages rather than business damages. It must be borne in mind that the witnesses for appellants, other than Mr. LeSuer himself, did not testify that it was necessary to make all the changes insisted upon by appellants. Thus the determination of the nature and extent of repairs and relocations necessary to restore appellants' property and business to its former profit-making capacity became a question to be resolved by the jury. In the performance of this duty the jury not only had the benefit of the testimony adduced at the trial but also the benefit of a view of the premises involved.
It is manifest that the jury verdict of $20,750 included an award for damages over and above the damages testified to by the state's witness. The excess over the minimum was approximately $9,000. Said amount might well have represented a jury acceptance of the testimony of one of appellant's witnesses that the cost of relocating the scales and scale house was nearer $16,200 instead of the state's evidence as to that item in the amount of $6,440. On the other hand, it is equally possible that the said $9,000 excess increment of the jury's award included damages of reduced profits (business damages) sustained by appellants during the period of time required to complete such relocations and repairs as the jury found were necessitated by the taking in order to restore the business to its earlier profit-making capacity. Mr. LeSuer testified that it would take three months to make the changes and at the annual profit rate of $10,000, the jury would be justified in awarding some $2,500 lost profits as business damage for the three months "down time" testified to by Mr. LeSuer. See Meyers v. City of Daytona Beach, 158 Fla. 859, 30 So.2d 354 (1947). In fine, then, it cannot be argued on the basis of the record before us that there was no award for business damage to appellant because the actual verdict may well have included some amount for this item of damage.
The remaining ground asserted as error was the failure to give appellants' request instruction number three. Although the record on appeal in the case sub judice contains a copy of the refused instruction, we do not find in the record a copy of all of the instructions which were given. It has been the longstanding rule in *269 Florida that where a record does not contain the entire charge given to the jury, the appellate court cannot say that the trial court erred in refusing to give a particular charge requested by the appellant. For all that appears to the reviewing court, a correct instruction covering the point may have been given by the trial judge. Grace v. State, 78 Fla. 486, 83 So. 271. The correlative rule is equally well settled that the giving or refusing to give requested instructions must be considered in the light of or in connection with the other charges which were given by the trial court. Saucer v. City of West Palm Beach, 155 Fla. 659, 21 So.2d 452 (1945); General Ready-Mixed Concrete v. Wheeler, 55 So.2d 331 (Fla. 1951); Crosby v. Stubblebine, 142 So.2d 358 (Fla.App. 1962).
The foregoing decisions require us to hold that not having been provided with all of the instructions which actually were given to the jury, this court can hardly determine whether the refusal to give a specific requested instruction was error.
Accordingly, the judgment herein appealed is affirmed.
CARROLL, DONALD K., Acting C.J., and WIGGINTON, J., concur.