JOHN WELLS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion filed February 5, 1918.

1. A defendant in a criminal case is not entitled as of right to an instruction to the jury to return a verdict of not guilty on the ground that the evidence would not support a verdict of guilty, the statute regulating directed verdicts being confined to civil cases.

2. The testimony of a witness, not on trial, is not inadmissible on the ground that it is a confession obtained by threats

3.. A remark of the State Attorney in his argument to the jury that "only one verdict of guilty could be given by six honest men," is not ground for a reversal of a verdict of guilt as charged, particularly when the trial court was not asked to do aything with reference to the remark except to note an exception taken to it.

4. Where there is substantial evidence to support the verdict, and the evidence does not greatly preponderate against the verdict approved by the trial court, and it does not appear that the jury were not governed by the evidence, the judgment will not be reversed on the ground that the verdict is without support in the evidence.

Writ of Error to Criminal Court of Record for Dade County, Jas. T. Sanders, Judge.

Affirmed.

*Taylor & Taylor,* for Plaintiff in Error;

*Van C. Swearingen,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

WHITFIELD, J.—This writ of error was taken to a conviction for receiving stolen goods knowing them to have been stolen. The only contentions here are that the court should have directed a verdict for the defendant; that improper testimony was admitted; that the evidence does not support the verdict and that the prosecuting attorney abused his privilege in addressing the jury.

The transcript brought here did not contain the entries of the record proper showing the arrangement of the accused or the judgment and sentence of the court; but certified copies of such entries have since been sent to the Court by the clerk of the trial court.

A defendant in a criminal case is not entitled as of right to an instruction to the jury to return a verdict of not guilty on the ground that the evidence would not support a verdict of guilty, the statute regulating directed verdicts being confined to civil cases. Bennett v. State, 68 Fla. 494, 67 South. Rep. 125; Hull v. Burr, 61 Fla. 32, 55 South. Rep. 852; Ryan v. State, 60 Fla. 25, 53 South. Rep. 448; Maloy v. State, 52 Fla. 101, 41 South. Rep. 791; Leaptrot v. State, 51 Fla. 57, 40 South. Rep. 616; Wilson v. State, 47 Fla. 118, 36 South. Rep. 580; McCray v. State, 45 Fla. 80, 34 South. Rep. 5;

Edwards v. State, 40 Fla. 484, 24 South. Rep. 141; Sec. 1496 Gen. Stats. 1906, Comp. Laws 1914.

It appears that the property ($65.00 in money) belonged to one Smith who had it in a trunk in his house to which his daughter a married woman living with her father had access. The daughter Elizabeth Smith or Butler a witness for the State testified that "John Wells came to see me and we talked on the porch. It was about ten o'clock at night. Wells told me to search and see if I could not find some money and we could take the money and get off and get married. Question. How could you marry Wells when you were already a married woman?. Answer. He was going to buy me a divorce. I wanted and was willing to go off with him. I went to my father's trunk and got the $65.00 and gave it to Wells. He left and I didn't see him any more until I was tried at the Police Court. Cross. Who did you first tell this story to? Answer Mr. Bishop. Question. Why did you tell him? Answer. He said he would see that Papa wouldn't whip me and it would be better, if I didn't I would be put in jail. Whereupon the defendant's attorney moved the Court then and there to instruct the jury to disregard the testimony as the same was a confession and was wrongfully obtained, to which request Court declined to do so and thereupon the defendant then and there excepted to said ruling which exceptions the Court duly noted. Elizabeth Butler being cross examined by defendant's attorney Robert R. Taylor testified as follows: Question. Did you not tell Wells that you had $65.00 and would give it to him if he would go with you? Answer. He told me to search for the money. I was willing to go off with him. Question. Did any one see you give the money to Wells? Answer. No. sir. It was dark, he

waited on the porch. Wells told me he was coming back after me. Question. Who had the money in charge? Answer. It was in papa's trunk but we all looked after it. I saw it there Friday afternoon. And thereupon the State produced John Bishop, who first being duly sworn testifies as follows: Am a member of the Miami Police Force, am a plain-clothes man. Last Saturday, 7th, a negro man told me some one had stolen his money out of his trunk on Ave. G. I went out there and investigated, and the more I saw of the case I was satisfied that some one of Smith's family had taken the money. I talked to his daughter Elizabeth. At first she didn't want to talk, she seemed to be in great fear of her father. She was afraid he was going to beat her. I told her I would see that he didn't harm her and she had better tell all she knew about it. If she didn't, I would put her in jail and then she would wish that she had. Thereupon defendant's attorney objected to witness relating what the girl said because it was a confession obtained by threats and not permissible, to which objection the Court overruled an exception noted; thereupon the witness continued. She told me she went to the trunk and got the money and gave it to Wells, that Wells and she were going off. Cross. Question. While you were investigating the case did not a yellow negro named Fox tell you at the depot that Wells was a cousin of his and that he, Fox, would telegraph Wells to come back and answer any charge you might prefer against him? Answer. Yes that is true and I told Fox that I never expected to see Wells again. I saw Wells at the City Court Monday, July 9th. He was waiting to see me. After the Court was through I had him locked up, charging him with helping to steal the money from Smith. Wells came to me voluntarily and gave himself up."

The defendant testified "I came to Miami last Thursday to tell my cousin Fox goodbye as he was going home, to the Bahama Islands. I saw Smith and his family. I stopped in a house next door to them. I sat on the porch Friday night talking to Lizzie until late. I saw her father come in and go up stairs. Elizabeth was stuck on me and wanted me to go off with her. I told her no, I wouldn't do it. She kept on begging, she offered to give me money if I would do so. While talking she borrowed my knife. She did not give me any money and I did not take any, she did not say anything about getting any, wanted me to take her off. On Saturday morning I saw her and her father, neither one said anything about money being taken. That evening I had to borrow money from my cousin to get back to Boynton. On Monday I received a telegram, this one: Witness read telegram as follows: Miami, Fla., 12:56 P. M. John Wells, colored, Boynton, Fla. You are accused of something. Come at once. Signed Fox. I immediately came to Miami and called three times at the Police Station, and afterwards I was locked up. I swore I never received one cent from Elizabeth Butler and I did not take any from her or her father. I know nothing about it. She wanted me to go off with her and because I would not go she now accuses me of stealing the money and saying she gave me the money." Objections were made to the testimony of the witness Elizabeth Butler as to what Bishop said to her and to the testimony of Bishop "relating what the girl said because it was a confession obtained by threats;" but the objections were overruled. There is nothing in the record to form a basis for these objections. The woman was not on trial and the credibility of her testimony as a witness was to be determined by the jury. No objection to

Bishop's testimony on the ground that it was hearsay evidence appears to have been made by the defendant.

In his argument to the jury the county solicitor said "That only one verdict of guilty could be given by six honest men." An exception to the remark was noted. Even if the remark would cause a reversal of the judgment upon proper foundation being laid, there is nothing to show that the court was asked to do anything except to note an exception to the remark. See Lampkin v. State, 70 Fla. 448; 70 South. Rep. 440.

It cannot be said there is no substantial evidence to support the verdict or that it appears the jury were not governed by the evidence in rendering the verdict.

The credibility of conflicting testimony was determined by the jury and the evidence is not so prepondering against the verdict approved by the trial court as to require a reversal of the judgment.

Affirmed.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.