155 So.2d 129 (1963)
Dan WILKINS and Tommy Lee Williams, Appellants,
v.
STATE of Florida, Appellee.
No. 32097.
Supreme Court of Florida.
June 28, 1963.
J. Worth Owen of Williams, Owen & Owen, Tallahassee, for appellants.
Richard W. Ervin, Atty., Gen., and A.G. Spicola, Jr., Asst. Atty. Gen., for appellee.
THOMAS, Justice.
The appellants were charged with committing murder in the first degree by bludgeoning to death 84-year old Henry Goodman. They were found guilty without *130 recommendation of mercy and sentenced to death.
It was well established that the appellants went to the home of their eventual victim in the nighttime while it was occupied by him and his wife, forced entry, severely beat both of them, raped the 75-year old wife, ransacked the place and departed with clothing, guns and several hundred dollars in money belonging to the Goodmans, leaving behind a trail of blood, broken furniture, torn clothing, bent weapons and general disarray.
The man, for whose murder appellants were tried, received wounds described as multiple lacerations, a comminuted or shattered fracture of an arm and two skull fractures which caused bleeding within his skull, resulting in his death.
The appellants first challenge the sufficiency of the evidence, independent of the confessions, to support the verdict and urge us to give it the study we are obligated to do by Sec. 924.32(2), Florida Statutes 1961, F.S.A. It is their position that the confessions should be disregarded because not freely and voluntarily given, thus blending their second question with their first.
Observing the mandate of the section, we have scrutinized the record of the testimony as, indeed, we are bound to do in a case such as this, when the death penalty has been imposed, even though the sufficiency of the evidence were not made a ground of appeal. And we have not found in the record reflecting the confessions any deficiency that would render them inadmissible. The trial judge appears to have meticulously followed our decisions outlining the procedure in such instances by having the witnesses to the circumstances surrounding the confessions examined in the absence of the jury, deciding then the voluntariness and freeness of the self inculpatory statements hence their admissibility, before exposing them to the jury for determination of their credibility. Even without the statements of the defendants there was abundant evidence to prove the essential facts we stated at the outset. So with or without the confessions the appellants were proved to have invaded the house of the Goodmans at night, laid blows on the occupants, laid waste their humble home and made way with their savings.
The appellants next question the propriety of the trial judge's action in permitting the introduction of photographs of the place as it looked when the sheriff, or his deputies, arrived. It seems that the appellants principally object to the pictures because they were in color.
We have often dealt with the subject of admissibility of photographs, approving them in some instances and disapproving them in others, but we have not yet passed upon the question with special attention to pictures taken in color. The reason for the dearth of decisions on the point is, probably, that color film is of relatively recent development.
In Mardorff v. State, 143 Fla. 64, 196 So. 625, we stressed the importance of pictorial representation of the scene of a crime because of the impossibility of a view of the premises by the court before change in their physical appearance and for the reason that descriptions by witnesses "however conscientious" vary "often to a surprising degree." We observed that "[n]o better way [had] * * * been devised to show the scene of a homicide than a photograph taken before the body of the deceased and the objects near or around it [had] been disturbed." Admissibility, we held, should be determined by the trial judge after an inquiry on the question whether or not the objects in the picture had meanwhile been changed. However, acknowledgment of the value of pictures was expressed and their admission under certain safeguards approved.
This court, in Thomas v. State, 59 So.2d 517, following Mardorff v. State, held that the picture of a murder victim was admissible in evidence although the scene was *131 revolting. The court cautioned, however, that photographs should be received with great caution.
On the other hand, in Dyken v. State, 89 So.2d 866, we disapproved a picture of the victim of a particularly brutal murder who had been shot in the head with a shotgun. The body had been removed to a mortuary. There seemed to have been no reason for the evidence and the court concluded, citing among other opinions Mardorff v. State, that although material evidence should not be excluded simply because it tended to prejudice the jury, the argument in this regard presupposed that the gruesome picture was "independently relevant." It was decided in that case that the picture not having included the locus of the crime, and having been taken of a body far in time and space from the death scene could have served no purpose but to inflame the jurors.
In Leach v. State, 132 So.2d 329, we dealt with the problem again, especially recognizing the opinion in the Mardorff case rendered 20 years before, and stating that "when photographs are otherwise relevant they will not be held incompetent merely because they tend to prejudice the jury." This pronouncement harmonized with the statement in Leach v. State, supra.
In Baugus v. State, Fla., 141 So.2d 264, the picture of a partially concealed body of a man who had been murdered was approved, even though it had been removed from the death scene, largely because of the concession that the portrayal was relevant to the matter of identity but we stated that there was nothing about it that was gruesome or repugnant.
We feel that the rule regulating the admissibility of pictures has been settled and that there is no occasion further to pursue it except to the point that it might be varied by the use of prints in color. The argument that there should be a distinction seems to us specious for the accuracy of a print should be enhanced by the natural color of the objects depicted. True, blood spilled in a murder will appear red and perhaps more gruesome than if it were black in a film taken without color but if we apply the basic theory of the Mardorff case, we do not comprehend how the one shown to have perpetrated the act can successfully complain about the shocking nature of pictures of a horrible scene which he, himself, created.
Our conclusion is that the test in judging admissibility is one of relevancy and that there is no reason to apply a separate and distinct rule to pictures in color.
The materiality of a colored picture was discussed in Goswick v. State, Fla.App., 137 So.2d 863, but it does not help us in the instant case because there was no determination of any distinction which should be made between colored pictures and black and white ones.
The final complaint presented by the appellants seems to involve the charges of the court to the jury. We say that such "seems" to be the complaint because no question is included in their brief, only a division of it titled "charges." They introduce the subject with the laudable concession that "no objection to the charges as given or omitted [was] made at the time or subsequently by motion." In view of the nature of the case and the consequent death penalty and our obligation under the statute to determine "if the interests of justice require a new trial" we have studied the charges carefully, although the quoted part relates to the evidence in a case.
The veteran circuit judge told the jury that the charge of murder in the first degree encompassed the offenses of murder in the second degree, murder in the third degree and manslaughter all of which he correctly defined. Then he charged the jury that the defendants could be found guilty of any one of the offenses or one defendant could be convicted of one offense and the other defendant of a different crime, or that either could be found guilty while the other could be acquitted. He advised the jury that in *132 the event of a verdict of guilty of the highest crime, a majority of the jurors could recommend mercy which would have the effect of reducing the penalty from death to life imprisonment.
We have found only one omission and that was with reference to the penalty for murder in the third degree. But we do not criticise it because there was no occasion to give it under the facts in the case, especially in view of appellants' concession. We mention it only because that crime was included with the others in the various phases of the charges.
We find no justification for disturbing the judgment of the circuit court so it is 
Affirmed.
ROBERTS, C.J., and TERRELL, DREW, THORNAL, O'CONNELL and CALDWELL, JJ., concur.