171 So.2d 361 (1965)
Daniel GRANT, Appellant,
v.
STATE of Florida, Appellee.
No. 31760.
Supreme Court of Florida.
January 8, 1965.
Rehearing Denied February 26, 1965.
Ray A. Munson, Miami, for appellant.
Earl Faircloth, Atty. Gen., and Bruce R. Jacob, Asst. Atty. Gen., for appellee.
CALDWELL, Justice.
The appellant was convicted of murder in the Circuit Court for Dade County on December 7, 1961, and was sentenced to death. He seeks reversal of the judgment on appeal.
The facts are that the body of the victim, Mrs. Hyman Nudel, was discovered at about 10:15 A.M., on the morning of June 24, 1961, in the back room of an upholstery shop operated by deceased and her husband in the City of Miami. The medical examiner testified death was caused by strangulation by hands and ligature, such as a cord or wire; that deceased was wearing shorts, unzipped along the left hip and briefs rolled to mid thigh level. It is unnecessary *362 to detail the evidence offered to show the victim had been raped.
The defendant, 31 years old, was charged with the crime. He had worked part time in the upholstery shop and was known to a neighboring storekeeper from whom he bought a soft drink at approximately 9:30 A.M. on the morning of the crime. He returned to the store 20 to 25 minutes later and bought candy. The appellant testified that he was in the upholstery shop as late as 9:45 A.M., when he left to return within a few minutes. He admitted being near the shop and seeing a postman, Austin James Scott, who testified the deceased was alive between 9:40 and 9:45 A.M.
The defendant made certain admissions to police officer Philip Doherty and to Dr. Harry Moskowitz. He also made a confession and allowed pictures to be taken of his re-enactment of the crime. The defendant, in his confession, admitted he went to the upholstery shop about 9:40 A.M. on the morning in question to borrow money; that the deceased was there alone, but that within a few minutes the postman came by and, at that time, he, the appellant, was in the doorway between the office and the back part of the shop where the body of the deceased was later found; that after the postman left he went to the box for ice water and stood by a sofa in the back of the shop; that the deceased walked up behind him and he turned around and bumped into her; that the deceased became frightened and began to call him names.
He further confessed he tried to stop the deceased from screaming and attempted to ravish her but denies having accomplished the act; that he strangled the deceased with his hands and with an extension cord and then wrapped a bedspread around her head, after which he went next door and purchased three pieces of candy.
The first and second questions presented have to do with the trial judge's refusal to allow questions by defense counsel touching alleged third party confessions; his denial in acting on a motion for continuance of defendant's asserted right to comment on matters having political connotation, or to present testimony in connection therewith, and the Judge's failure to disqualify himself on suggestion by counsel for the defendant. We find no error on these points and see no purpose to be served by discussion.
The third point on appeal is whether it was prejudicial error and a denial of the rights of the accused under the Florida and Federal Constitutions to admit the confession of the defendant because he had been held 53 hours before interrogation. The defendant was questioned by police officers from 6:31 P.M. until 2:00 A.M., at which time he confessed the commission of the crime. The accused testified the confession was procured by torture and brutality.
The extra-judicial confession and the relevant facts incident thereto were examined by the trial judge, in the absence of the jury, and the confession was found to have been freely and voluntarily given. The Judge allowed its admission for the jury's determination as to its credibility. The record discloses the defendant was free to act uninfluenced by hope or fear and that no compulsion or force was used in obtaining the confession. His testimony that he was tortured was rebutted by numerous witnesses. The confession appears to have been freely and voluntarily made as a result of reasonable choice. We find nothing in the voluminous record to indicate error in this respect.
The appellant contends his statements to a psychiatrist were improperly admitted in evidence. It appears the defendant had complained of headaches and the psychiatrist was sent to examine him. During the course of his questioning the defendant admitted grabbing the deceased by the throat to keep her from screaming, after he had accidentally bumped into her. The trial judge, in the absence of the jury, heard evidence touching this admission and *363 was convinced the statements were freely and voluntarily made. There was no showing of psychological coercion and we find, in this respect, there was no error.[1]
The defendant presents as error the admission, over his objection, of a color motion picture film and seven still photographs portraying a re-enactment of the crime. The film and photographs were made at approximately 5:15 A.M., after he had confessed.
It is conceded that motion picture films and photographs are admissible in evidence if they tend to illustrate or explain the testimony of a witness.[2] The defendant insists the pictures were merely cumulative and added nothing to the confession previously made by him. He takes exception to the fact that the pictures showed the defendant in garb customarily worn by the inmates of a jail. The state contends the pictures were necessary, were taken of the shop as it was the morning of the crime and were taken to supplement and explain the confession.
The question of whether motion pictures and photographs purporting to show the re-enactment of crime are admissible has not heretofore been determined in Florida. Such pictures have been held admissible under proper safeguards by the courts of other jurisdictions.[3] We have approved the use of motion pictures in civil controversies[4] and posed still pictures in criminal trials.[5] We have held admissible the testimony of a sheriff and others as to what was said and done at the re-enactment of a murder.[6]
The rule governing admissibility in evidence of photographs applies with equal force to the admission of motion pictures.[7] We cite with approval the language of the court in the California case of People v. Dabb:[8]
"A motion picture of the artificial recreation of an event may unduly accentuate certain phases of the happening, and because of the forceful impression made upon the minds of the jurors by this kind of evidence, it should be received with caution. As pointed out by Wigmore, such a portrayal of an event is apt to cause a person to forget that `it is merely what certain witnesses say was the thing that happened' and may `impress the jury with the convincing impartiality of Nature herself.' (3 *364 Wigmore, Evidence [3rd ed.], § 798a., p. 203.) However, when the events which are being photographed consist of a voluntary re-enactment by the accused of what ocurred, there is little, if any, danger of misleading emphasis which is unfavorable to him. Moreover, as a method of presenting confessions, sound motion pictures appear to have a unique advantage in that, while presenting the admission of guilt, they simultaneously testify to facts relevant to the issue of volition."
Where a motion picture involves reconstruction and re-enactment it may be subject to the same objection as posed photographs of the scene, viz.: That the bias of the party or agent preparing the scene, directing and taking the pictures has intruded and affected the accuracy of pictures.[9] However, where, as here, the defendant himself has voluntarily acted out the crime at the scene, the danger of one-sided or inaccurate presentation is minimized.[10]
In the instant case the defendant voluntarily re-enacted the crime with knowledge that the pictures were being taken. In State v. Palmer, the Louisiana Supreme Court reasoned as follows:[11]
"It is significant that the defendant went to the scene of the crime where these photographs were taken, voluntarily and without protest. There is no denial of that fact. There is no proof or suggestion that the defendant was promised, induced, or coerced in any manner to enact the facts surrounding the crime. Manifestly, the words and actions of the defendant in describing how and in what manner he had committed the crime charged was a recapitulation of his oral confession of an hour previous and can be correctly held to be a second and separate confession. The photographs taken alone, in connection with the demonstrated actions of the defendant, with his voluntary statements, were also nothing less than a pictured confession, the admissibility of which is approvingly received by a great majority of our states. The testimony of the officers explaining these photographs and what transpired at that time, is not to be considered irrefutable proof of what in fact occurred, but as an illustration by the defendant himself in proof of his motive and intent.
"Let us assume that had the statements and actions of the defendant at the scene of the crime been made in the presence of these officers without the use of photography, can it be said that the proffered testimony of these officers detailing these facts at the trial would be inadmissible? We readily think not. * * *"
The trial judge in the absence of the jury scrutinized the films and pictures offered here, examined the evidence incident to their taking and found no infringement *365 of the rights of the defendant. We find there was no error in the admission of the pictures.
The appellant complains that the re-enactment pictures were taken of the defendant in jail attire in the nature of bluishgrey service fatigues. This question has not heretofore been considered by this Court but an examination of precedent in other jurisdictions and the evidence of this cause convinces us the point is without merit.[12]
The remaining point to be considered is the conduct of the prosecuting attorneys in the closing arguments. The appellant asserts they advanced personal belief in the guilt of the accused[13] and commented upon the suffering of the victim's family,[14] all of which tended to arouse passion and prejudice of the jury
It is unnecessary to enlarge upon the sound rule of practice that the prosecution will not in argument express belief in the guilt of the defendant[15] and will not make inflammatory reference to the victim's family.[16] Competent counsel avoid such breaches of legal propriety and the courts will scrutinize such offensive conduct with great care. We have meticulously examined the record here and have concluded that the trial judge succeeded in erasing from the minds of the jury any prejudice which may otherwise have resulted from the improper references made *366 by the prosecution.[17] The remarks complained of, when considered in the light of the entire record, did not constitute reversible error.[18]
We have carefully considered all of the evidence upon which the jury could have arrived at its verdict and we find it was sufficient to establish guilt to the exclusion of and beyond a reasonable doubt. The judgment appealed from should be affirmed.
It is so ordered.
DREW, C.J., and ROBERTS and O'CONNELL, JJ., concur.
THOMAS, J., dissents with Opinion.
THORNAL, J., dissents and agrees with THOMAS, J.
THOMAS, Justice (dissenting).
It seems to me that the introduction of photographs and moving pictures of the scene of the alleged crime and the re-enactment of the offense constituted egregious error and that the ends of justice require a new trial.
As we observed in Mardorff v. State, 143 Fla. 64, 196 So. 625, 626:
"The admissibility of such evidence [photographs] must be determined by the trial judge after an inquiry as to whether the objects appearing in the picture are in the same position as when the crime was discovered to preclude fabrication of testimony, for a picture of the reconstruction of the crime would be harmful in the same degree that the true representation would be helpful to the jury in comprehending the real conditions of the place where the crime was committed. Wharton's Criminal Evidence, 11th Ed., Vol. 2, Sec. 773; Ortiz v. State, 30 Fla. 256, 11 So. 611; Wharton's Criminal Evidence, supra."
The Mardorff opinion was filed in 1940 but 23 years later it was recognized and approved by a unanimous court in Wilkins v. State, Fla., 155 So.2d 129.
In the instant case the furniture in the room where the crime was alleged to have been committed had been moved and then, three days later, for the benefit of the pictures to be taken was rearranged. Moreover, certain `props' were introduced, namely, an electric cord, supposedly the object used to strangle the victim, and a detective who took a place on the floor to represent the body of the victim.
Moreover, the crime was reenacted, apparently under the supervision of a police sergeant for the record shows this testimony:
"Q Sergeant DeLeon, what did the defendant do then at your request?
"A I asked him if he was doing this re-enactment of his own free will, and he said, `Yes' and I asked him to show me what happened.
"Q Did he, sir?
"A Yes, sir.
"Q And were you photographing this?
"A At this time, no.
"Q All right, sir, did you take two separate sets of photos, or did you have him go through this twice?
*367 "A I had him go through it three times.
"Q One time while he was going through it did you photograph it in black and white still photos?
"A Yes.

* * * * * *
"Q [By Mr. Jones] What happened during the three times he reenacted the crime? What did you do, sir?
"A The first time I asked him to show me what happened for a dry run, using Detective Utes as the subject. The second time I took colored 16 mm. motion pictures and the third time I took black and white still pictures. (Italics supplied.)
"Q Did he indicate to you whether he was willing to go through this?
"A He said he was willing.
"Q Sergeant, would you step down here, please, and assist us in displaying these movie films.
"A Yes, sir."
So, after a "dry run" or rehearsal, a movie of the performance in which the appellant was induced to participate was taken, and it is a fair deduction from the evidence that while he was doing so he was clothed in jail or prison garb. These were followed by still pictures.
My conclusion is that such procedure was prejudicial, harmful error and, as I stated at the outset, I cannot agree to send a man to the electric chair on testimony of this sort.
Furthermore, I am convinced that the approval of this kind of evidence would set a precedent that would result in untold miscarriage of justice in future cases.
I dissent.
THORNAL, J., concurs.
NOTES
[1] See Denmark v. State, 95 Fla. 757, 762, 116 So. 757, 759 (1928):

"It is fear of material or physical harm, or hope of material reward, which renders a confession inadmissible. * * * A confession voluntarily made, but procured by artifice, falsehood, or deception, is admissible." Accord, Harrison v. State, 110 Fla. 420, 424, 148 So. 882 (1933).
[2] Lindberg v. State, 134 Fla. 786, 790, 184 So. 662, 663 (1938); Boyd v. State, 122 So.2d 632, 634 (Fla.App. 1st 1960).
[3] People v. Dabb, 32 Cal.2d 491, 197 P.2d 1 (1948); State v. Palmer, 227 La. 691, 80 So.2d 374 (1955); State v. Wise, 19 N.J. 59, 115 A.2d 62 (1955); Pollack v. State, 215 Wis. 200, 253 N.W. 560. aff'd on reh. 215 Wis. 224, 254 Wis. 471 (1934); c.f. Mouton v. State, 155 Tex. Cr.R. 450, 235 S.W.2d 645 (1950), harmless error even though pictures showed defendant handcuffed during re-enactment of crime; Buie v. State, 217 Miss. 695, 64 So.2d 897 (1953) trial court properly rejected posed pictures sought to be introduced by defendant allegedly showing position of deceased at time of shooting.
[4] Larnel Building, Inc. v. Martin, 105 So.2d 580 (Fla.App. 1958); Gulf Life Ins. Co. v. Stossel, 131 Fla. 127, 179 So. 163 (1938); See "Use of Motion Pictures as Evidence," 62 A.L.R.2d 686 (1958).
[5] Hall v. State, 78 Fla. 420, 83 So. 513, 8 A.L.R. 1034 (1919); Baston v. Shelton, 152 Fla. 879, 13 So.2d 453 (1943); see Mardorff v. State, 143 Fla. 64, 196 So. 625 (1940).
[6] Frazier v. State, 107 So.2d 16 (Fla. 1958).
[7] 2 Wharton, Criminal Evidence § 694 (12 ed. 1955).
[8] 32 Cal.2d 491, 498, 197 P.2d 1, 5 (1948).
[9] 3 Wigmore, Evidence § 798a (3rd ed. 1940). See, Hall v. State, 78 Fla. 420, 429, 83 So. 513, 516, 8 A.L.R. 1034 (1919): "The fact that placing the pieces of paper on the floor to represent the spots where the two wounded men were lying after the shots were fired made the photographs a kind of tableau picture, yet they were not subject to the criticism that any one's version, theory, or interpretation of the character of the act was thus sought to be brought before the jury as a photographic view of the actual occurrence."
[10] Ibid.; see, Commonwealth v. Carelli, 281 Pa. 602, 607, 127 A. 305, 306 (1925):

"Objections made to the admission ofphotographs of the saloon where the murder was perpetrated, on the ground that they were taken nearly a month after the date of the crime, must necessarily fall, because they were taken when the defendant and his fellow criminals were themselves showing how the crime was committed, in order that the photographer should get an exact reproduction of the saloon, and of the location of the parties in it, at the date of the murder."
[11] 227 La. 691, 718, 80 So.2d 374, 383 (1955).
[12] Mouton v. State, 155 Tex.Cr.R. 450, 235 S.W.2d 645 (1950) admission into evidence of pictures showing defendant in handcuffs re-enacting the crime held harmless error; see People v. Garcia, 124 Cal. App.2d 822, 824, 269 P.2d 673, 674, cert. denied 348 U.S. 901, 75 S.Ct. 225, 99 L.Ed. 708, Cer. denied 350 U.S. 1000, 76 S.Ct. 554, 100 L.Ed. 864 (1954), defendant appeared before jury panel dressed in blue denim shirt and trousers, on which were written "County Jail." Motion to discharge entire panel was denied. The California Court stated:

"It appears that the jury might well have known, other than by the writings on the clothing, that defendant was, at the time, in the custody of the sheriff. Apparently, no former request was made to have defendant appear in ordinary clothing. No authority is cited that holds that if the jury is informed that defendant is in the custody of the sheriff or in jail at the time of trial, it would be prejudicial error to order defendant to trial under those conditions."
[13] The following statements by the State during oral argument elicited prompt objection by defense counsel on the ground that the prosecution was indicating a personal belief in the guilt or innocence of the accused, and were followed by the court's instruction to the jury that it disregard such statements:

(a) "I have been a prosecutor for six years and one of the first things I learned is to determine whether or not a defendant is going to have a bona fide defense * * *."
(b) "Would you believe that every single one of these policemen lied under oath, every one of them, not only the Miami Police Department, but the Department of Public Safety? Do you believe every one of us, and this includes me, because I swear for this testimony when I put them on the stand. * * *"
(c) "[A]ccording to his [the defendant's] testimony, which is one of the most fantastic stories I have ever heard. * * *"
(d) "[A]nd considering the inference that a public official even a prosecutor, could deliberately prosecute an innocent man. * * *"
[14] The following statements by the State during oral argument were objected to by defense counsel as attempts to invite passion and prejudice. These objections were sustained.

(a) "Sure I did not put Nudel on the stand. We are not going to submit him to any more torture or examination as when he found his. * * *"
(b) "Come Christmas there will not be any mother home with those children, and * * *."
[15] Tyson v. State, 87 Fla. 392, 100 So.2d 254 (1924).
[16] Barnes v. State, 58 So.2d 157 (Fla. 1952).
[17] See Powell v. State, 93 Fla. 756, 112 So. 608 (1927); Hancock v. State, 90 Fla. 178, 105 So. 401 (1925); Washington v. State, 86 Fla. 533, 98 So. 605 (1923); Landrum v. State, 79 Fla. 189, 84 So. 535 (1920); Wells v. State, 75 Fla. 229, 77 So. 879 (1918); 50 A.L.R. 2d 766 (1956); c.f. Pait v. State, 112 So.2d 380 (Fla. 1959).
[18] Fla. Stat. §§ 54.23, 924.33, F.S.A. (1961).