546 So.2d 1094 (1989)
STATE of Florida, Appellant,
v.
Bernard Clarence CHAVIS, Appellee.
No. 88-1058.
District Court of Appeal of Florida, Fifth District.
June 22, 1989.
Rehearing Denied July 31, 1989.
*1095 Robert A. Butterworth, Atty. Gen., Tallahassee and Pamela D. Cichon, Asst. Atty. Gen., Daytona Beach, for appellant.
Robert Wesley, Orlando, for appellee.
SHARP, Chief Judge.
The state appeals from the trial court's order which suppressed Chavis' confession of the murder of a pizza delivery man in Orlando, Florida.[1] Chavis was charged by indictment with first degree murder. The trial court ruled that Chavis' Miranda rights were violated[2] by an Orlando detective's (Nazarchuk) reopening Chavis' interrogation after he told a Pasco county detective (Johnson Alland) he did not want to talk "right now." The trial court also ruled that Nazarchuk psychologically coerced Chavis to make an involuntary confession by telling him about the state's evidence against him. We reverse.
The record of the suppression hearing established that on September 22, 1987, at approximately 7:00 p.m., Deputy Stanley made a routine check of the parking lot at Quail Hollow Plaza in Westlake Chapel, Pasco County, Florida. He saw Chavis sitting behind the wheel of a parked, white Ford Escort station wagon. The area was one not usually occupied by cars. Chavis watched Stanley's car as it circled the area.
Stanley parked some distance from Chavis and observed him for fifteen to twenty minutes. He radioed in the Orange County tag number of the station wagon, but received a negative report. He then approached Chavis on foot and inquired whether Chavis had a problem. Chavis replied he was just tired and resting before driving back to Orlando.
While talking with Chavis, Stanley observed the vehicle identification number of the station wagon. He also saw drug paraphernalia in the car. He asked to see Chavis' drivers license. Chavis said he did not have it with him, but he gave Stanley his name and birth date.
Stanley returned to his patrol car and radioed for an additional check on the vehicle identification number and Chavis' name. Chavis came back "negative," but Stanley learned the vehicle was reported stolen from a homicide victim in Orange County. Stanley called for a supervisor and backup.
He approached Chavis as Chavis opened the driver's door and started to get out. Stanley had no choice but to arrest Chavis. He handcuffed him and placed him in the back of his patrol car.
Other Pasco County detectives arrived and secured the stolen car. Stanley read Chavis his Miranda rights. He asked if Chavis wanted to talk to him. Chavis said he wanted to talk. He explained he found *1096 the station wagon parked on a street in Orlando with keys in the ignition. He then drove to Tampa; thought of going to Brooksville to see a girlfriend; changed his mind, and was trying to figure out where to go next when Stanley found him. Stanley drove Chavis to the Pasco County Sheriff's Office and turned him over to detectives Johnson Alland and Wilbur at 9:30 p.m.
Johnson Alland and Wilbur had also been at the Quail Hollow parking lot. While there, they asked Chavis if he wanted food or drink. Wilbur then gave Chavis a soft drink. Later HE stopped by McDonald's and bought Chavis some food, which he gave to him at the sheriff's office.
Johnson Alland put Chavis in a small interrogation room. Wilbur gave Chavis the sandwich and another soft drink. Johnson Alland read Chavis the Miranda rights card and asked if he wanted to talk. He replied he did not want to talk "right now." She left and asked him no further questions.
Wilbur remained with Chavis in the interrogation room. Chavis ate his sandwich. Wilbur gave Chavis cigarettes and he smoked them. Wilbur did not talk about the arrest. At no time did Chavis ask to consult a lawyer.
At 11:00 p.m. Nazarchuk and Gay, detectives investigating the homicide in Orange County, arrived. Johnson Alland told them Chavis said he did not want to talk to her. When Nazarchuk and Gay entered the interrogation room, Wilbur left.
Nazarchuk asked Chavis if they could talk to him about the homicide in Orlando. They told him he had been observed driving the stolen car and that there were witnesses who saw a person matching his description ordering pizzas to be delivered to the Quality Inn, the site of the pizza delivery man's murder.
Nazarchuk read Chavis his Miranda rights anew. Chavis said "you got it." In a thirty-minute conversation, Chavis confessed he broke into a motel room at the Quality Inn in Orlando, ordered pizza to be delivered, and then decided to rob the delivery man of his money and car. When the delivery man struggled, he shot him, and fled in the car. He threw the murder weapon into a lake in Pasco County.
Wilbur was called in to help identify the lake. Chavis drew a map. But Chavis refused to put his confession on tape and he was apprehensive when the detectives took notes of his statements.
All three officers who testified at the suppression hearing said Chavis appeared to be normal, not under the influence of drugs or alcohol. He seemed neat and well-educated to Wilbur. Johnson Alland said he may have appeared somewhat tired, but no more fatigued than she was.
No one made any threats or promises to Chavis to induce him to confess. He was not deprived of food and drink, nor was he interrogated ceaselessly over long hours. By comparison with some reports of much harsher police tactics memorialized in case law,[3] Chavis was treated in a highly civilized, commendable fashion. Chavis did not testify to dispute any of the officers' accounts of his arrest and interrogation.
In Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), the United States Supreme Court evolved the test for when Miranda rights are violated by resumption of questioning after a suspect has invoked his right to remain silent. We grant, for purposes of our own review, that Chavis did claim his right to remain silent, as the trial judge found. However, Chavis' statement was in fact equivocal.[4] He said he did not want to talk "right now," while eating his sandwich. He had previously freely talked to Stanley.
The Mosley court said the police must immediately stop all questions, as Johnson Alland did. Next, there must be a "significant time lapse" after stopping the interrogation before commencing it anew. Here, *1097 there was approximately a one and one-half hour lapse. That was slightly less than the two-hour time lapse in the Mosely case. Shorter time intervals have also passed muster. See McNickles v. State, 505 So.2d 633 (Fla. 4th DCA), rev. denied, 515 So.2d 230 (Fla. 1987) (45 minutes); State v. Isaac, 465 So.2d 1384 (Fla. 2d DCA 1985) (one hour and fifteen minutes).
Further, Mosley requires that Miranda warnings must be given again before questioning renews. Here Chavis received Miranda warnings from Stanley, Johnson Alland, and Nazarchuk. Each read him his rights before putting any questions to him. No per se violation of Miranda appears on the face of this record.
With regard to the coercive nature of the interrogation, we fail to see how the trial judge's conclusions in this regard are supported by the record. Here Chavis was treated with consideration. He was offered food and drink and cigarettes. He was not questioned for long hours. No threats or false promises were made to him.[5]
The trial judge thought Nazarchuk's recitation of the state's evidence against Chavis coerced him into making the confession. There is no evidence in this record that Nazarchuk misrepresented any facts to Chavis. Even if he had, such trickery or deception would not alone amount to coercion. See Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Grant v. State, 171 So.2d 361 (Fla. 1965), cert. denied, 384 U.S. 1014, 86 S.Ct. 1933, 16 L.Ed.2d 1035 (1966); State v. Moore, 530 So.2d 349 (Fla. 2d DCA 1988); State v. Manning, 506 So.2d 1094 (Fla. 3d DCA 1987). There is no evidence in this record that Nazarchuk lied or tricked Chavis. The comments should have put a normal person on notice that he was in "big trouble," and that he should continue to remain silent and call for a lawyer. Chavis chose to do neither. His resulting confession was clearly voluntary and thus is admissible. See Moon v. State, 525 So.2d 870 (Fla. 1988).
Accordingly, the order suppressing Chavis' confession is reversed and this cause is remanded for further proceedings.
REVERSED and REMANDED.
DANIEL and GOSHORN, JJ., concur.
NOTES
[1] This is a non-final appeal authorized by Florida Rule of Appellate Procedure 9.140(c)(1)(B).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] See, e.g., Grant v. State, 171 So.2d 361 (Fla. 1965), cert. denied, 384 U.S. 1014, 86 S.Ct. 1933, 16 L.Ed.2d 1035 (1966); Spradley v. State, 442 So.2d 1039 (Fla. 2d DCA 1983).
[4] Cf. Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).
[5] Cf. Spradley v. State, 442 So.2d 1039 (Fla. 2d DCA 1983).