PADOVANO, J.,
concurring.
Although I am in full agreement with the majority opinion on the motion to certify, I consider it appropriate, in view of the comments made in the dissenting opinion, to explain my reasons for voting to hear this case en banc. I believe that the original panel decision was fundamentally flawed and that it would have ultimately undermined an important principle of law. If the opinion had been allowed to stand, it would have had a profound negative impact on the way criminal cases are tried. This I considered to be a matter of exceptional importance.
*630 The argument made in the initial brief was that the state’s motion to revoke Mr. Junior’s plea agreement should be introduced into evidence because it is the equivalent of an admission by a party opponent. The theory advanced to support this argument was that the prosecutor must have doubted that Junior was telling the truth or he would not have sought to revoke the agreement. From this supposition, the argument moves on to a conclusion that the jury should have been informed about the state’s motion to revoke Junior’s plea agreement. This is where the argument breaks down.
Assuming that the actions of a lawyer in filing a motion could somehow be treated as an admission or statement by the party the lawyer represents, that alone would not justify the presentation of evidence regarding the filing of the motion. Section 90.803(18)(a) provides that a statement by a party opponent is “not inadmissible” on the ground that it is hearsay; but that does not necessarily mean that the statement is admissible. If the statement should be excluded on some other ground, for example that it is not relevant, then it should be excluded whether it is hearsay or not.
A statement is not admissible merely because it is not hearsay, but this is the main premise of the argument Mr. Child-ers made on appeal. The fallacy of his argument is that it conflates principles that belong to the subject of hearsay with those that belong to the subject of relevance. Evidence is not relevant and therefore admissible merely because it is not hearsay.
This fundamental error permeated the discussion during the oral argument of this case, and I believe that it eventually led the panel to analyze the case incorrectly. The critical point that was overlooked in the panel’s analysis is that a prosecutor’s personal belief about the credibility of a witness is irrelevant. In fact, the Florida courts have gone to great lengths to make sure that a prosecutor’s personal belief is not presented to a jury. This is the part of the original panel decision that concerned me the most.
If we accept the proposition that the defense can present evidence tending to show that the prosecutor does not believe a witness, then we must also accept the proposition that the state is entitled to present evidence tending to show that a prosecutor believes a state’s witness or disbelieves the defendant. Yet in an unbroken line of cases dating back to 1907, the Florida courts have held that it is improper to allow a prosecuting attorney to comment on the credibility of a witness or the guilt of the defendant. See Martinez v. State, 761 So.2d 1074, 1081 (Fla.2000); Gore v. State, 719 So.2d 1197, 1201 (Fla.1998); Grant v. State, 171 So.2d 361, 365 (Fla.1965); Tyson v. State, 87 Fla. 392, 394, 100 So. 254, 255 (Fla.1924); Adams v. State, 54 Fla. 1, 45 So. 494 (Fla.1907); Cartwright v. State, 885 So.2d 1010, 1015 (Fla. 4th DCA 2004); Keyes v. State, 804 So.2d 373, 375-376 (Fla. 4th DCA 2001); Lavin v. State, 754 So.2d 784, 785-786 (Fla. 3d DCA 2000); D’Ambrosio v. State, 736 So.2d 44, 47-48 (Fla. 5th DCA 1999); Pacifico v. State, 642 So.2d 1178, 1183-84 (Fla. 1st DCA 1994); Conley v. State, 592 So.2d 723, 731 (Fla. 1st DCA 1992); Riley v. State, 560 So.2d 279, 280 (Fla. 3d DCA 1990); Jones v. State, 449 So.2d 313, 314-315 (Fla. 5th DCA 1984); Harris v. State, 414 So.2d 557, 558 (Fla. 3d DCA 1982); Buckhann v. State, 356 So.2d 1327, 1328 (Fla. 4th DCA 1978); Reed v. State, 333 So.2d 524, 525 (Fla. 1st DCA 1976); Price v. State, 267 So.2d 39, 40 (Fla. 4th DCA 1972).
When I considered the motion to hear the case en banc, it seemed to me that the *631 panel never fully appreciated the gravity of the error it was about to commit. This error is, in my view, best illustrated by a statement made in Chief Judge Kahn’s dissent to the en banc decision on the merits. There Judge Kahn stated that the attempted revocation of Junior’s plea agreement should have been admitted in evidence because “it would have tended to show that the State entertained serious doubts about the credibility of its key witness.”
With all due respect, I believe that this statement would undermine nearly one hundred years of Florida law. From the first reported opinion on this subject to the most recent, Florida courts have consistently held that a prosecutor may not offer an opinion on the credibility of a witness or the guilt of the defendant.
The Florida Supreme Court has observed that an expression by the prosecutor of his personal belief about the defendant’s guilt is “antithetical to his responsibilities as an officer of the court,” Gore v. State, 719 So.2d at 1202, and “[i]t ill becomes those who represent the State in the application of its lawful penalties to themselves ignore the precepts of their profession and their office.” Bertolotti v. State, 476 So.2d 130, 133 (Fla.1985) (emphasis in original). “Competent counsel avoid such breaches of legal propriety and the courts will scrutinize such offensive conduct with great care.” Grant, 171 So.2d at 365. “It is the responsibility of the prosecutor to seek justice, not merely to convict. That responsibility will be more nearly met when the jury is permitted to reach a verdict on the merits without counsel indulging in appeals to sympathy, bias, passion or prejudice.” See Harris v. State, 414 So.2d 557, 558 (Fla. 3d DCA 1982).
Moreover, as our supreme court has observed, considerable prejudice arises in the minds of the jurors when they hear a representative of their government personally vouching for the soundness of the case against the defendant:
It is particularly improper, even pernicious, for the prosecutor to seek to invoke his personal status as the government’s attorney or the sanction of the government itself as a basis for conviction of a criminal defendant.
The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says. That same power and force allow him ... to impress on the jury that the government’s vast investigatory network, apart from the orderly machinery of the trial, knows that the accused is guilty or has non-judicially reached conclusions on relevant facts which tend to show he is guilty.
Ruiz v. State, 743 So.2d 1, 4 (Fla.1999) (quoting United States v. Garza, 608 F.2d 659, 662 (5th Cir.1979)).
The present case involves an effort by the defense to place a prosecutor’s opinion before the jury, but the rule can be no different in this situation. As the cited opinions illustrate, there is a real danger in allowing a prosecutor to state an opinion on the credibility of a witness. Florida courts have never allowed this kind of testimony, and it would take very little imagination to understand and appreciate the problems we would be creating if we allowed it now in this case.
I recognize that Mr. Childers has also argued that the prosecutor’s attempt to revoke the plea agreement goes to the bias of the witness, and that there is at least some argument that could be made that the evidence is therefore logically relevant. But the probative value of this evidence is so attenuated that it has little if any real *632 value. Junior defeated the motion. One would have to assume that he believed he was on thin ice and would therefore be predisposed to testify favorably for the state on the fear that they might file the motion again. This is a speculative assumption, which, in my view, is no more than a pretext to support the ultimate goal of placing before the jury evidence that the prosecutor did not believe his own witness. Consequently, the exclusion of this evidence was not error. Even if the trial judge was mistaken to say that the evidence was not logically relevant, he would have been duty bound to hold that it was legally irrelevant and therefore inadmissible under section 90.403. Florida law simply does not allow a jury to be told of a lawyer’s opinion regarding the credibility of a witness.
For these reasons, I considered this case to be a case of exceptional importance and voted to hear the case en banc. It is true, as Judge Ervin has said, that the term “exceptional importance” is not defined in Rule 9.331, but I do not think that it is such a bad thing that appellate judges are left to use their own judgment about this. Perhaps we have become so accustomed to guidelines and standards imposed by others that we have begun to think that we cannot judge without them. I don’t think that is the case. To the contrary, I think that this is an area that is best left to the discretion of appellate judges.
It appears to me that the Florida Supreme Court did not intend to interject itself into the day-to-day application of the en banc rule, but rather that the court thought it would be best to allow the district courts to interpret and apply the rule on their own. This conclusion is supported by the supreme court’s decision in Chase Federal Savings & Loan Association v. Schreiber, 479 So.2d 90 (Fla.1985). There the court held that the district courts are free to develop their own standard of deci-sional uniformity in deciding whether to grant en banc hearings and rehearings. It is logical to assume that the supreme court holds the same view about the proper interpretation and application of the term “exceptional importance.” This part of the rule was added after the decision in Chase, but the general point is the same. The supreme court recognized that en banc review is a matter for the district courts.
The supreme court could have defined “exceptional importance” in the text of rule 9.331, but it did not. I think it was wise to avoid such a definition. To say what exceptional importance is would also say what it is not. A limiting definition might prevent this court from correcting its own errors in some cases. In any event, I think this case plainly a case of exceptional importance. Even without the explanation I have given for my own vote, it should be obvious to anyone who is trying to untangle all of the opinions that have been written in this case both on the merits and with respect to the en banc procedure that the case is very important.
It is true that there is an element of subjectivity in separating cases that are of exceptional importance from those that are not. Different judges will have different views about this. But we should not overlook the fact that a case cannot be heard en bane unless a majority of the judges think that it is one of exceptional importance. It is not as though one judge or two or even five can do this with their own subjective opinions about what is important. With all due respect, I think that if a majority of the judges on this court think that this case is a case of exceptional importance, those judges who disagree should simply accept the court’s decision. It does the judicial system no good to question why some judges believed it was proper.
*633 I would be concerned about the absence of standards for the definition of the term “exceptional importance” if there were some evidence that the en banc rule was being abused, but there is not. This court handles on average about six thousand cases per year, but the number of cases considered en banc is never more than six
per year and most often fewer that. All of the rest are decided in panel decisions by the court. On this point, the records kept by our clerk reflect the following:
[[Image here]]
These statistics show that the exceptional importance provision in the en banc rule is not being used capriciously and that it is not being used merely to express disagreement with a panel decision. This court and other appellate courts have been very careful to use this provision only when it is necessary to resolve cases of exceptional importance.
In this concurring opinion, I have highlighted one specific concern about the panel decision in this case, but that should not be taken as an implication that I disagree with any of the other reasons that have been given for hearing this case en banc. In fact, I think it is clear from the entire set of opinions, that there were several good reasons to convene the full court.